**STEINER et al.**

**v.**

**MITCHELL, Secretary of Labor.**

**No. 11934.**

United States Court of Appeals,
Sixth Circuit.

Aug. 10, 1954.

Cecil Sims, Nashville, Tenn. (Louis Leftwich, Jr., Denney, Leftwich & Glasgow, Wilson Sims and Bass, Berry & Sims, Nashville, Tenn., on the brief), for appellants.

Sylvia S. Ellison, Washington, D. C. (Stuart Rothman, Bessie Margolin and David F. Babson, Jr., Washington, D. C.,

and Jeter S. Ray, Nashville, Tenn., on the brief), for appellee.

Before SIMONS, Chief Judge, ALLEN, Circuit Judge, and FORD, District Judge.

FORD, District Judge.

The Secretary of Labor, in his capacity as Administrator of the Wage and Hour Division of the United States Department of Labor, instituted this action to enjoin the appellants from violating the overtime and record-keeping provisions of the Fair Labor Standards Act of 1938 as amended, 29 U.S.C.A. § 215 (a) (1, 2, 5). This appeal is from the judgment of the District Court granting the injunction.

Appellants are engaged in manufacturing automotive type wet storage batteries which they sell in interstate commerce. In their manufacturing operations at their plant at Nashville, Tennessee, appellants regularly employ from thirty to forty workmen. It is undisputed that the manufacturing process in which appellants' employees are engaged requires the use of various chemicals and chemical compounds, including sulphuric acid, lead metal, lead oxide, lead sulphate and lead peroxide, which create conditions which are dangerous to the health of the workers.

Before beginning their productive work in the morning, most of appellants' employees change from their street clothes into work clothes provided for them by the appellants, and when their productive labor is discontinued in the evening they remove the work clothes, take a shower bath and put on their street clothes. The changing of clothes and showering are activities which take place at the plant, and the work clothes for such changing and facilities for such showering are provided by the appellants.

The only question presented for determination is whether the activities of the employees of appellants in changing clothes and taking shower baths at the plant, on account of the hazardous conditions inherent in the nature of their work, are so closely related to the duties which they are employed to perform as to constitute an integral part thereof and should be classed as "principal" rather than "preliminary" and "postliminary" activities within the meaning of Section 4(a) (2) of the Portal-to-Portal Act of 1947, 61 Stat. 84–87, 29 U.S.C.A. § 254(a) (2), which is as follows:

"(a) Except as provided in subsection (b), no employer shall be subject to any liability or punishment under the Fair Labor Standards Act of 1938, as amended, the Walsh-Healey Act, or the Bacon-Davis Act, on account of the failure of such employer to pay an employee minimum wages, or to pay an employee overtime compensation, for or on account of any of the following activities of such employee engaged in on or after the date of the enactment of this Act. * * *

"(1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and

"(2) activities which are preliminary to or postliminary to said principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities."

The use of the phrase "principal activity or activities" in the Statute suggests that the word "principal" in some situations, may apply to more than a single type of activity, but, in view of the great variety of industrial conditions and various types of industries throughout the nation, it was obviously not practicable for the area embraced by the words "principal activity or activities" to be precisely defined or marked out. The scope or reach of the phrase was left to be measured by the facts and circumstances involved in each industry.

For aid in determining the intent and purpose of Congress in the use

of the words "principal activity or activities", it seems appropriate to resort to the legislative history of the Act. "When aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no 'rule of law' which forbids its use, however clear the words may appear on 'superficial examination.'" United States v. American Trucking Associations, Inc., 310 U.S. 534, 543–544, 60 S.Ct. 1059, 1064, 84 L.Ed. 1345; Harrison v. Northern Trust Co., 317 U.S. 476, 479, 63 S. Ct. 361, 87 L.Ed. 407.

"It is the sponsors that we look to when the meaning of the statutory words is in doubt." Schwegmann Bros. v. Calvert Corp., 341 U.S. 384, 394–395, 71 S.Ct. 745, 750, 95 L.Ed. 1035.

In the Conference Report upon the Portal-to-Portal Act presented by Representative Gwynn in the House of Representatives (93 Cong.Rec. 4388) and by Senator Wiley in the Senate (93 Cong. Rec. 4371), it is said that the language of Section 4 of the Act, here in question, follows that of the Senate Bill. In the Report of the Senate Committee it is stated that the term "principal activities" includes all activities which are an integral part of a principal activity, two examples of which are set out in the report. In explaining the term "principal activities," Senator Cooper, one of the members of the Committee which reported the Senate Bill, and one of its sponsors, stated:

"*  *  * We believe that in the use of the words 'principal activity' we have preserved to the employee the rights and the benefits and the privileges which have been given to him under the Fair Labor Standards Act, because it is our opinion that those activities which are so closely related and are an integral part of the principal activity, indispensable to its performance, must be included in the concept of principal activity. *  *  * (93 Cong.Rec. 2297)."

■ Moreover "It is settled that 'subsequent legislation may be considered to assist in the interpretation of prior legislation upon the same subject.'" Great Northern Ry. v. United States, 315 U.S. 262, 277, 62 S.Ct. 529, 535, 86 L.Ed. 836; Sarlls v. United States, 152 U.S. 570, 576, 14 S.Ct. 720, 38 L.Ed. 556.

By the "Fair Labor Standards amendments of 1949," 63 Stat. 910–11, Congress added paragraph "o" to Section 3 of the Act as follows:

"(o) Hours Worked.—In determining for the purposes of sections 6 and 7 the hours for which an employee is employed, there shall be excluded any time spent in changing clothes or washing at the beginning or end of each workday which was excluded from measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee."

It is not difficult to perceive that this amendment was predicated upon recognition by Congress that, under some circumstances and conditions, changing clothes and washing may be part of compensable "principal activities." It affords impressive confirmation of the interpretation of the Act in accordance with its above legislative history.

The authorities relied upon by appellants are not apposite to the questions here presented. Newsom v. E. I. Du Pont de Nemours & Co., 6 Cir., 173 F.2d 856, and Lasater v. Hercules Powder Co., 6 Cir., 171 F.2d 263, both decided by this Court, arose under Section 2 of the Portal-to-Portal Act, 29 U.S.C.A. § 252, and the questions therein presented and decided are not here pertinent.

None of the other cases cited dealt with activities made necessary by imminent dangers to the health of employees which arose out of and were inherent in the nature of the work for which they were employed.

Upon the evidence presented bearing upon the material issues, the District Court found the facts as follows:

"The use of sulphuric acid involves the probability of deteriorating the clothing and, in some cases, of burning the skin of those who have occasion to handle it. The deterioration of clothing renders the employee more susceptible to contamination of his skin and body by particles of lead and lead compounds.

"Pure lead metal and the various lead compounds which are used in the manufacture of automotive-type wet storage batteries are materials which are toxic to human beings. Regular exposure to atmosphere containing as much as 1.5 milligrams of lead per 10 cubic meters is regarded by the medical profession as a hazardous exposure with the attendant possibility of lead intoxication or lead poisoning. There is no proof as to the lead concentration in the air in defendants' plant.

"Storage battery manufacture is recognized by experts as one of the most hazardous of the lead-using industries due to the fact that it necessarily involves dusty processes in which the concentration of lead in the atmosphere is almost impossible to control within absolutely safe limits.

"Clothes-changing and showering practices in the storage battery industry are a recognized part of industrial hygiene programs designed to reduce the hazards of lead poisoning to such manufacturing employees.

"Section 5788.15, Tennessee Code Annotated, 1950 Cumulative Pocket Supplement, a law establishing an industrial hygiene division or service as a part of the Tennessee state department of public health, provides in part as follows:

" ' * * * that every employer shall provide adequate and sanitary shower facilities when the workers are exposed to excessive heat, or to skin contamination with infectious, irritating, or toxic materials.'

"Defendants are covered by the Tennessee Workmen's Compensation Act, Sections 6851–6901 Williams Tennessee Code Annotated, 1950 Cumulative Pocket Supplement, Section 6852(d) thereof providing that lead poisoning is an occupational disease made compensable by statute. Defendants carry insurance, an alternative requirement under Section 6895 of the statute, to protect against liability under this law.

"During the period since January 25, 1950, most of defendants' employees have customarily changed clothes in a locker room (equipped with separate lockers for work and street clothing) provided by defendants before reporting to their places of work in the plant. Defendants customarily furnish scrap clothing which their employees are free to use, if they choose, during working hours. Most of defendants' employees have customarily showered at defendants' plant after completing their manufacturing duties and have then changed back to their street clothing before leaving defendants' premises. In no instance has time spent by defendants' employees in changing clothes in the morning and in the evening or in showering at the plant in the evening been regarded by the defendants as time worked by their employees, nor has it ever been recorded as such. Said employees have never been compensated for the time so spent. Defendants' employees customarily work as many as forty (40) hours per week exclusive of time spent in clothes-changing and showering.

"Although it has been stipulated that the defendants have never issued any order nor made any formal requirement that their plant employees use the clothes-changing and

showering facilities provided by the defendants, the defendants' insurance carrier would not accept the insurance risk if defendants refused to provide showering and clothes-changing facilities for their employees. Such facilities, having been furnished, were intended to be used. From time to time defendants' plant superintendent, with immediate supervision over the employees and representing the defendants in relation to their employees, instructed the employees to change clothes and shower on defendants' premises and most of defendants' employees, understanding the instructions to represent the wishes of the defendants, obeyed.

"The furnishing, by defendants, of clothes-changing and showering facilities, and the use of such facilities by defendants' employees, have the effect of reducing and controlling the defendants' potential legal liabilities, enable the defendants to comply with the direct requirements of state law and the indirect requirements of their insurer, and contribute to the continued and uninterrupted operation of the defendants' business by promoting the health of defendants' employees.

"Although none of defendants' employees has been found to have lead poisoning during the period covered by the complaint, abnormal concentrations of lead have been discovered in the bodies of some of defendants' employees and defendants' insurance doctor has recommended that such employees be segregated from their customary duties.

"The possibility and danger of skin burns and deterioration of clothing with the attendant loss of protective cover, resulting from the use of sulphuric acid renders the showering and clothes-changing activities performed by defendants' employees an essential part of the performance of their duties.

"The hazard of lead poisoning resulting from the regular contact of defendants' employees with lead and lead compounds renders the showering and clothes-changing activities performed by defendants' employees necessary and indispensable to the performance of their duties.

"Clothes-changing and showering activities performed by defendants' employees are made necessary by the nature of the work performed by said employees. Such activities fulfill mutual obligations between said employees and defendants and directly benefit the defendants and their operation of their business. Said activities are so closely related to other duties performed by defendants' employees as to be an integral part thereof."

■ The major part of the testimony upon which the findings of the District Court rest consisted of a certified record of testimony taken at a hearing before the U. S. Department of Labor, supplemented by depositions, and on that account the findings of the District Court are deprived of the degree of finality which would otherwise attach under Rule 52, 28 U.S.C.A., Seagrave Corp. v. Mount, 6 Cir., 212 F.2d 389, 394. We are of the opinion, however, that the Court's findings are amply supported by the evidence and should not be disturbed.

That changing of clothes and taking of shower baths at the time and in the manner herein described are regular practices which are recognized as essential safeguards against the serious occupational hazards to which appellants' employees are daily subjected in the performance of their duties is sufficient to render them an integral and indispensable part of the principal activities which they are employed to perform, within the meaning of the Portal-to-Portal Act, and time spent in such activities is time worked within the meaning of the Fair Labor Standards Act, as amended.

The judgment of the District Court should be and is affirmed.