228 F.2d 929
 Frank A. CIEMNOCZOLOWSKI, Ray Winfrey, Connie Merchant,
Loren R. Garst, individually and as agents and
representatives to maintain this action for and on behalf of
all employees similarly situated, Appellants,
v.
The Q.O. ORDNANCE CORPORATION, Appellee.
Joseph P. DUNNING, Ernest Bingham, O.Q. Gaines, John H.
Sievers et al., individually and as agents and
representatives to maintain this action for and on behalf of
all employees similarly situated, Appellants,
v.
The Q.O. ORDNANCE CORPORATION, Appellee.
 Nos. 15186, 15187.
 United States Court of Appeals Eighth Circuit.
 April 29, 1955.
Rehearing Denied in No. 15186 June 27, 1955.
Rehearing Granted in No. 15187 Feb. 10, 1956.*
 
 Charles W. Hess, Jr., Kansas City, Mo. (Thomas W. Lanigan, Grand Island, Neb., Guy A. Magruder, Jr., Arthur N. Nystrom and Terrell & Taylor, Kansas City, Mo., were with him on the brief), for appellants.
 Leo Eisenstatt, Omaha, Neb. (G. L. DeLacy, Omaha, Neb., was with him on the brief), for appellee.
 Before SANBORN, COLLET and VAN OOSTERHOUT, Circuit Judges.
 COLLET, Circuit Judge.
 
 
 1
 Two separate actions were instituted in 1945 in the United States District Court for Nebraska to recover compensation under the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., for time allegedly devoted by plaintiffs to defendant's work and for which the plaintiffs were not compensated. The cases were consolidated. The trial was by the court without a jury. After entering detailed findings of fact the trial court entered judgment for the defendant. The principal question involved on this appeal is whether the findings supporting the judgment are clearly erroneous.
 
 
 2
 Defendant was engaged in the operation of a large Ordnance plant for the United States Government at Grand Island, Nebraska, in the production of explosives, bombs and T.N.T. for use in the prosecution of World War II. Plaintiffs were employed by defendant as guards, matrons, firemen, workmen in the production line processing explosive materials and loading bombs, called powder line operators, production inspectors, safety inspectors and area maintenance men.[1]
 
 
 3
 The guards, including matrons, are claiming compensation for time spent on defendant's premises after their guard shift was over while waiting for drill or pistol practice. For a portion of the period of employment this waiting time was 30 minutes. Later it was reduced to 15 minutes. Still later it was eliminated entirely. The trial court found that during this waiting period the guards were completely off duty, that the periods constituted 'preliminary' and 'postliminary' activities for which there was neither a contract nor a custom for payment under the Portal-to-Portal Act. 29 U.S.C.A. § 251 et seq.
 
 
 4
 The firemen are claiming compensation for two, three and five hour periods periodically occurring when they were required to be on duty during what they claim was their sleeping period. During the period in controversy the firemen were working on the two platoon system. That is, they were on duty for 24 hours and off duty 24 hours. The 24 hour duty period was divided into 8 hours regular duty, 8 hours recreation and 8 hours sleeping time. They were paid for the 8 hour sleeping period. They claim, as indicated, that their sleeping time was interrupted when they were required to stand watch 'on the floor or at the P.B.X. switchboards' for periods varying from two to five hours. The trial court found that when that occurred, they were allowed an additional sleeping period equal to the time such sleeping periods were interrupted.
 
 
 5
 The production line operators which are referred to in Plaintiffs' brief as 'Powder Line Operators,' and production inspectors are claiming compensation for a forty-five minute period occurring every shift, which time was devoted to removing their clothing at the beginning of the shift and donning their working clothes, and removing their working clothes, taking a shower bath, and dressing in their street clothes at the end of the shift. The trial court found that this time was spent in 'preliminary' and 'postliminary' operations for which there was neither a contract nor a custom for payment under the Portal-to-Portal Act.
 
 
 6
 We need not reiterate in detail that if, as plaintiffs contend, all of these periods of time constituted an integral part of their principal duties they are entitled to recover compensation therefor without meeting the requirements of the Portal-to-Portal Act by proving a special contract under which they were to be compensated for these periods or a custom or practice under which compensation was made therefor. Central Missouri Telephone Co. v. Conwell, 8 Cir., 170 F.2d 641. Martin-Nebraska Co. v. Culkin, 8 Cir.,197 F.2d 981.
 
 
 7
 We find no justification in the record for holding clearly erroneous the trial court's findings that the guards and matrons were off duty during their waiting period and that the guards' and matrons' waiting periods were preliminary and postliminary for which there was neither a contract nor a custom under which they were to be paid.
 
 
 8
 Nor is there justification for overturning the finding that the firemen were given additional sleeping periods equaling the time their regular sleeping periods were interrupted.
 
 
 9
 We pass without unnecessary discussion of the evidence the foregoing questions to the central question of whether the trial court's finding that the powder line workers were not engaging in an integral part of their principal duties during the forty-five minute period was clearly erroneous.
 
 
 10
 As plaintiffs aptly state in their brief-- 'The basic issue on this point is whether or not the clothes changing and showering activities were part of the principal activities which these workers were employed to perform.'
 
 
 11
 The powder line workers who engaged in melting, pouring and processing explosives were required to change their clothes and take a shower after their shift. They were required to change their clothes as a safety precaution against explosions which might be caused from sparks from metallic objects on or in conventional clothing. They were required to take a shower as a safety measure for the employee's own health to avoid after effects of powder remaining on the person of the employee.
 
 
 12
 These plaintiffs contend that because they were required for those reasons to devote this period of time to those purposes, that the time so devoted was time spent in a necessary part of their principal duties. The argument is made to the effect that since it was undisputed that they were required to do these things, they were necessarily an integral part of their principal duties and the trial court's finding that these activities were preliminary and postliminary must be held to be clearly erroneous as contrary to the undisputed evidence or as based on a misconception of the law. Steiner v. Mitchell, 6 Cir., 215 F.2d 171, is relied upon to support that position.
 
 
 13
 The factual situation in Steiner v. Mitchell appears to be similar in many respects to the facts here. In Steiner v. Mitchell the question was whether the changing of clothes, and taking a shower at the end of the working day, was a part of the employees' 'principal activity.' The trial court had found that these activities were so necessary to and such an integral part of the principal activity of manufacturing storage batteries as to constitute a part of the principal activity.
 
 
 14
 It appears that this finding was based to a large extent upon the fact that the activities were necessary for the protection of the health of the employees and required by the employer.
 
 
 15
 We do not understand however, that the import of Steiner v. Mitchell is that those facts would compel the conclusion that in every case where the changing of clothes was required as a protection to the health of the employees the activity was a part of the principal activity if other cogent facts were present which prevented a finding that the greater weight of the evidence established the hypothesis that the activities in question were principal activities.
 
 
 16
 It is pointed out in Steiner v. Mitchell, 215 F.2d at page 172 that the great variety of industrial conditions and various types of industries throughout the nation made it impractical for Congress to precisely define the area embraced by the statutory language "principal activity or activities." The Court then said:
 
 
 17
 'The scope or reach of the phrase (principal activity) was left to be measured by the facts and circumstances involved in each industry.'
 
 
 18
 The fact that the area embraced within the term 'principal activity' was not precisely defined by Congress necessarily resulted in a relegation of the question to the courts under facts peculiar to each case, applying the general principles laid down by Congress. And while not intended to be conclusive in all cases under all circumstances, Congress indicated clearly by the 1949 Amendment to the Fair Labor Standards Act, 63 Stat. 910-911, 29 U.S.C.A. § 203(o) that changing clothes and washing at the beginning or end of the workday should not in all cases be treated as compensable activity. The Amendment referred to is as follows: (Par. 'o' Sec. 3):
 
 
 19
 '(o) Hours Worked.-- In determining for the purposes of sections 206 and 207 of this title the hours for which an employee is employed, there shall be excluded any time spent in changing clothes or washing at the beginning or end of each workday which was excluded from measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee.'
 
 
 20
 The Wage and Hour Administrator interprets 'principal activity' in his Interpretative Bulletin as follows, (29 Code Fed.Reg. Sec. 790.8(c):'(c) Among the activities included as an integral part of a principal activity are those closely related activities which are indispensable to its performance. If an employee in a chemical plant, for example, cannot perform his principal activities without putting on certain clothes, changing clothes on the employer's premises at the beginning and end of the workday would be an integral part of the employee's principal activity. On the other hand, if changing clothes is merely a convenience to the employee and not directly related to his principal activities, it would be considered as a 'preliminary' or 'postliminary' activity rather than a principal part of the activity.'
 
 
 21
 The Administrator's interpretation is entitled to consideration. While not controlling, it represents an informal judgment based upon wide experience. But we are unable to agree that the fact alone that an employee cannot perform his principal activity without changing clothes or taking a bath will make those activities a part of his principal activity beyond the reach of Section 4 of the Portal-to-Portal Act. Section 4 of that Act, 29 U.S.C.A. § 254, expressly provides that, § 254(a) and (a)(2)
 
 
 22
 '* * * no employer shall be subject to any liability * * * under the Fair Labor Standards Act * * * on account of the failure of such employer to pay an employee * * * for or on account of any * * * (2) activities which are preliminary to or postliminary to said principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities * * *' unless by an-- 'express provision of a written or nonwritten contract * * * or a custom or practice * * *' they have been recognized as compensable.
 
 
 23
 If the term 'principal activity' was intended to include ipso facto, activity necessarily incident to the principal activity there would be no possibility of applying the 1949 Amendment of the Fair Labor Standards Act quoted above to necessary preliminary activities. And the application of Sec. 254(a)(1)[2] prohibiting the inclusion of necessary preliminary and postliminary activities in compensable time for principal activities unless so recognized by contract or custom[3] would likewise be circumscribed. As stated in Mitchell v. King Packing Co., 9 Cir., 216 F.2d 618, loc.cit. 621:
 
 
 24
 'In our view the terms 'preliminary' or 'postliminary' cannot be interpreted so as to exclude all activity 'indispensable to the performance of productive work.' To do so would deny effect to the intended meaning of the Portal-to-Portal Act. All of the activities designated as 'preliminary' by the Supreme Court in the Mt. Clemens case (Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515) can be considered indispensable. See McComb v. C. A. Swanson & Sons, D.C.D.Neb., 1948, 77 F.Supp. 716, 733.'
 
 
 25
 We must conclude that the necessity of an activity to the performance of the principal activity will not alone make the former a part of the principal activity.
 
 
 26
 Whether a preliminary or postliminary activity, necessary to the performance of the 'principal activity', is an integral part of the principal activity is a question of fact to be determined from all the relevant evidence. That a finding of fact will not be disturbed unless clearly erroneous is axiomatic.
 
 
 27
 This court held certain activities to be a part of the regular duties or principal activities of the employee in Central Missouri Telephone Co. v. Conwell, 8 Cir., 170 F.2d 641 and again in Glenn L. Martin-Nebraska Co. v. Culkin, 8 Cir., 197 F.2d 981. But the facts in those cases distinguish them from this case. We find no justification in the record for disturbing the trial court's findings that the time devoted to changing clothes and taking a shower bath were preliminary and postliminary, and that no contract or custom or practice to pay for such time had been shown.
 
 
 28
 The further point is made that the finding of the trial court to the effect that Sergeants of the Guard did not devote as much as twenty percent of their time to the same duties as other guards was clearly erroneous. The finding was made incident to the claim of the Sergeants that they were not properly classified as executive personnel under Section 13(a)(1) of the Fair Labor Standards Act, 29 U.S.C.A. § 213(a)(1).
 
 
 29
 One of the requirements for classification as executive personnel promulgated by the Administrator is that the employee to be so classified shall not devote more than 20 percent of his hours worked to the performance of nonexecutive duties. 29 U.S.C.A.Appendix Rules and Regulations Part 541. The record amply supports the findings. There is no merit in this contention.
 
 
 30
 The judgment is affirmed.
 
 
 
 *
 Rehearing granted limited to claims of production line operators and inspectors
 
 
 [1]
 The safety inspectors and area maintenance men did not appeal
 
 
 [2]
 29 U.S.C.A. § 254(a) '* * * no employer shall be subject to any liability * * * under the Fair Labor Standards Act * * * on account of the failure * * * to pay an employee * * * for or on account of * * * (1) walking, riding, or traveling to and from the actual place of performance of the principal activity * * * which such employee is employed to perform * * *.'
 
 
 [3]
 29 U.S.C.A. § 254(c) 'For the purposes of subsection (b) of this section, and activity shall be considered as compensable under such contract provision or such custom or practice only when it is engaged in during the portion of the day with respect to which it is so made compensable.'