Bennie W. JACKSON, et al.,
Plaintiffs-Appellants,

v.

AIR REDUCTION COMPANY, Inc.,
Defendant-Appellee.

No. 17830.

United States Court of Appeals
Sixth Circuit.

Oct. 18, 1968.

John P. Sandidge, Louisville, Ky., for appellants; Woodward, Hobson & Fulton, Louisville, Ky., on brief.

Hubert T. Willis, Louisville, Ky., for appellee; W. Bruce Baird, Louisville, Ky., Arthur P. Rogers, New York City, on brief; Middleton, Seelbach, Wolford, Willis & Cochran, Louisville, Ky., of counsel.

Before WEICK, Chief Judge, McCREE, Circuit Judge, and McALLISTER, Senior Circuit Judge.

McALLISTER, Senior Circuit Judge.

Bennie W. Jackson and fifty other employees of Air Reduction Company, Inc. brought an action, under the Fair Labor Standards Act, Title 29 U.S.C.A. Secs. 201–219, against the Company to recover overtime compensation. From a judgment of the District Court, dismissing the action, the employees appeal.

Appellee company has a plant on Bells Lane in Jefferson County, near Louisville, Kentucky. There, through the use of very high temperatures in electric furnaces, coke, by the application and admixture of lime briquettes, is converted into calcium carbide, which is then converted into acetylene gas for sale and conveyance by pipeline in the making of synthetic rubbers.

It appears that shortly after the construction of the Company's plant in 1942, there was instituted, beginning in 1943, a system of early reporting and early relief of certain of the Company's employees, and that this system was instituted at the insistence of the barge and acetylene plant employees—as distinguished from the carbide department and other phases of manufacturing— solely for their personal convenience. From 1943 until January 21, 1965, this system was maintained at the behest of the named employees.

The system of early reporting to work, and early relief, came about in order to let the employees get to their lockers at the conclusion of their workday, wash up, change their clothes, and do whatever they wanted in order to be able to clock out exactly on the hour of twelve midnight. This was for the purpose of enabling the employees to catch the midnight bus, since at the time the system was instituted, gasoline was rationed because of the war. The evidence is, generally, to the effect that the employees were permitted to punch in at twelve or fourteen minutes before the hour of 4:00 P.M., and to check out at twelve or fourteen minutes before 12:00 midnight. This system continued for twenty-two years at the request of the employees, even after the war and gasoline rationing, because the men preferred that method of punching in and checking out.

However, on January 21, 1965, the Wage and Hour Division of the Department of Labor conducted an investigation of the Company with regard to the early reporting for work and the early relief. The exactitude of the fourteen minutes early reporting, and the fourteen minutes of early relief is a little vague in certain instances, in some cases the time appearing, on various days, with some employees, to be twelve minutes instead of fourteen minutes, and in different instances, other divergencies not, however, continuous or of the same duration. Also, the early punching in and early relief, instead of punching in on the hour and being relieved on the hour, obviously called for examination by the Wage and Hour Division with regard to what total hourly work was performed by the employees, and whether overtime pay was involved.

After the Wage and Hour Division had conducted its investigation of appellee company with respect to the system of allowing early reporting for work, and early relief—and without any adverse action against the Company or criticism of its conduct—the Company evidently came to the conclusion that in order to avoid any future uncertainty with regard to these methods of operation, it would discontinue the practice of early reporting for work by the employees, and early relief; and on January 21, 1965, this practice was discontinued, so that now the employees are on the Company's premises only about eight hours a day, except for a minute or two, and are paid for the eight hours, and there is no problem with the records and no possibility of complaint by the Wage and Hour Division or by the employees.

When the above-mentioned practice was discontinued, the employees were disappointed, and all of them wished to return to the former system. No one at the time had any complaints about the practice, or any question or claim for

extra pay resulting from the practice, which, it should be repeated, had been in effect for twenty-two years.

However, the claim now advanced by the appellant employees in this litigation is that the employees began their regular activity of employment with the Company twelve minutes before shift time every day, and did not leave the employer's premises until eight hours and twelve minutes later and that they were, therefore, entitled to have the extra twelve minutes' time each day included in their work week for the purpose of determining overtime compensation now due to them.

All of the appealing employees were members of the International Brotherhood of Firemen and Oilers, affiliated with the AFL-CIO, which acted as their bargaining agent under a collective bargaining agreement which covered all of the appealing employees in this action. The union bargaining agent has taken no action in this case.

The Wage and Hour Division, likewise, has taken no action in this case. The only parties concerned are employees who have been working under the above-mentioned practice of early reporting and early relief that had been in existence for twenty-two years without any claim for overtime, and with such satisfaction respecting this system that they were disappointed when it was discontinued, and, even at the time of the hearing in the District Court, wished to revert to the former practice.

■ Under the Portal-to-Portal Act, Title 29 U.S.C.A., Sec. 254, an employer cannot be made subject to liability under the Fair Labor Standards Act for failure to pay the prescribed minimum wage or overtime for activities which are preliminary or postliminary to the principal activity for which the employee is employed to perform, unless there is a contract, custom or practice requiring pay for these preliminary and postliminary activities.

In dismissing the employees' complaint, Judge Brooks stated that the critical factual issue was whether the employees, as they claimed, had worked for the Company twelve minutes a day in excess of eight hours, for which excess period they did not receive compensation; and he held that they had not sustained their burden of proving that fact; that under the evidence, the early reporting and early relief practice was initiated and maintained by the Company at the request of its employees, and was adopted solely for their benefit and personal convenience, while the benefit resulting therefrom to the employer was both insubstantial and insignificant.

In its opinion, the District Court further found that by reporting twelve or fourteen minutes early, the employees were entitled to be relieved twelve or fourteen minutes early, so that they might shower, get into their clothes, and do whatever else might be necessary to be ready to check out exactly at the contractual end of their particular shift; that the activities of the employees during the period following their early relief were "predominantly, if not entirely, spent in their own interests preparatory to going home"; that the employees wanted this arrangement, and that they requested it initially so that the late shift on which all of the men, or most of them, worked, from time to time, could catch the midnight bus, and get a head start on the employees of neighboring plants in order to avoid heavy and congested traffic, because the shifts at the other plants in the area terminated at the same time. The District Court further observed that the proof demonstrated that the employees and the Union of which they are members, "even now would like to return to the old policy and the old practice of early reporting and early relief."

It is maintained by appellants that the employees, while waiting to leave the premises of the Company shortly before midnight to catch the midnight bus, were, according to their agreement, to remain on the premises, and that this was of benefit and profit to the Company, since, during the period after they

had finished work, changed their clothes and the like, they were present and could be called upon by the Company to help in case a fire broke out, or an emergency arose that could not be handled by the relieving shift. If the premises did catch fire, it seems reasonable to assume that the employees, even after they were relieved by another shift, would naturally help with putting out the blaze as volunteers. In any event, they were not obliged under their agreement to act in this capacity after their work period was concluded. The argument is too tenuous to sustain appellants' claim.

Generally, the overtime claimed by appellants consisted of the time while they were in the employ of the Company, and was consumed in the exchange of information which was conveyed to them by the employees, who were being relieved, with regard to certain trouble they had experienced in production during their shift. This exchange of information might, in certain cases, take as much as five minutes, while the "leader" of the shift being relieved told the foreman "what's wrong at the cylinder plant," for instance, or informing him that "you've got troubles over there," and then consuming something like two minutes for the foreman to inform the leader of the relief shift what the situation was. However, usually this exchange of information took two or three seconds, but in rare situations it required as much as ten minutes. On the whole, as one of the employees testified, a man at the acetylene plant "worked eight hours and got paid for eight hours."

██ It is not clear why the employees and the Company agreed that the employees would remain on the premises, after their showering and changing of clothes, for the short time before the bus departed, and no evidence indicated why either the employees or the Company fixed on this provision. It may have been for the orderly dismissal of one

shift, and the orderly entry of the relief shift, or for some such reason. But whatever the purpose, there is no proof that it was for the profit of the Company, and that this fragment of time was compensable.

As to work on the barge, no employee was ever docked for not getting there before the commencing hour of the shift, and no one was required to remain on the premises after the hour on which the shift formally ended—that is, about midnight on the late night shift.

The District Court held that the trading by the employees of some ten to fourteen minutes at the beginning of their shifts for a similar period at the end of their shifts did not add any compensable time to their eight-hour day, even though the employees, as their agreement provided, did remain on the Company premises for the additional period of time, since their additional period was spent by the employees *predominantly*, if not entirely, in their own interests.

In conclusion, the District Court stated that, under the facts in this case it would be inequitable as well as contrary to the law to have the employer agree to adopt a change in its work schedule for the accommodation and personal convenience of its employees, and then permit the employees to force the Company to pay a penalty for accommodating them.

██ On an examination of the record, we are in accord with the views of the district judge, who was faced with vague and confusing testimony and contradictory statements, as well as with clear and explicit testimony. The case was a fact case, and the fact finder was the district judge. The findings were not clearly erroneous. On the contrary, they were sustained by substantial evidence.

In accordance with the foregoing, the judgment of the District Court is affirmed.