John R. CHERUP et al., Plaintiffs,

v.

PITTSBURGH PLATE GLASS COMPANY, a corporation, Defendant.

Civ. A. No. 1565–W.

United States District Court,
N. D. West Virginia.

Nov. 7, 1972.

John T. Madden, Madden & Hughes, Moundsville, W. Va., for plaintiffs.

Oscar J. Andre, Steptoe & Johnson, Clarksburg, W. Va., for defendant.

MAXWELL, Chief Judge.

Pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq., as amended, 214 employees of Pittsburgh Plate Glass Company instituted this civil action against their employer for the recovery of unpaid overtime compensation, an equal amount as liquidated damages, interest, court costs and attorney fees.

Each plaintiff is employed by defendant as a shift worker in one of the various departments of the Chemical Division of defendant's Natrium Plant which is located in this judicial district near the community of Natrium in Marshall County, West Virginia.

Defendant is a Pennsylvania corporation authorized to do business in the State of West Virginia. Its Natrium Plant is a three-shift, twenty-four hour continuous process operation engaged in the manufacture of heavy chemicals. The three shifts at the Natrium Plant were established by labor contract to run from 7:00 o'clock a. m. to 3:00 o'clock p. m., from 3:00 o'clock p. m. to 11:00 o'clock p. m., and from 11:00 o'clock p. m. to 7:00 o'clock a. m.

It has been stipulated that the plaintiffs and defendant corporation are within the respective definitions of employee and employer as set forth in § 3 of the Act, 29 U.S.C. § 203; that the defendant corporation was engaged in

commerce within the meaning of the Act; and that this Court has jurisdiction of this matter by virtue of 28 U.S.C. § 1337. It was further stipulated that each plaintiff was either a member of the International Chemical Workers Union, AFL–CIO, from June 7, 1963 to February 28, 1964, or a member of Local 45 of the International Chemical Workers from February 28, 1964 to June 7, 1965, the recognized collective bargaining agents for the time important to this litigation.

More specifically, plaintiffs contend that they are entitled to overtime compensation at the rate of one and one-half times the regular hourly wage under the provisions of § 7 of the Act, 29 U.S.C. § 207, for work performed in excess of forty hours during the period from August 9, 1963, to June 7, 1965. In their original complaint plaintiffs sought recovery for excess hours from June 7, 1963, to June 7, 1965. The Initial date was later amended to August 9, 1963. Plaintiffs allege that this excess work was the result of defendant's "suffering, and permitting, and also encouraging" the plaintiffs to clock-in as much as twenty-five minutes prior to the commencement of the shift and to report early to their working stations, and of defendant's "requiring" the plaintiffs to remain on the plant premises until the scheduled clocking-out time.

Recognizing the inherent procedural difficulties in an action which is in reality 214 individual causes of action, counsel requested the Court to rule on the primary issues of defendant's liability for compensatory damages. This ruling is based on the pleadings, selected testimony, stipulations of the parties, various exhibits, written briefs and the oral argument of counsel. Under this procedural arrangement between counsel and the Court, if liability is found, then the referral of this case to a special master for a determination of amounts due and owing each individual plaintiff was considered to be the proper and practical manner of further proceeding.

In a further attempt to fully develop and present this case, counsel for both sides have chosen fifteen plaintiffs for the purpose of eliciting testimony. This testimony is in the form of depositions and is recognized as being representative of the testimony of all plaintiffs as to the liability issue. In addition to these depositions the Court also has before it the depositions of three plant officials.

As illustrated by plaintiffs, a typical shift employee at the Natrium Plant during the time covered by this action would arrive at a designated time clock where he could punch in as much as twenty-five minutes early. The employee would then either walk or ride to a locker area, change his clothes and then report to his working station. If he was not required to change clothes and did not choose to do so, the employee reported immediately to his working station after clocking in. Once on the job the on-coming employee made the relief and assumed his regular duties.

The relieved employee, although permitted to leave his work station and to wash up and change clothes, was required to remain on the plant premises and not clock-out until the scheduled end of the shift.

Thus if a shift employee at the Natrium Plant reported to work early and worked a regular eight hour shift, he would receive eight hours pay despite the fact that his time card for that day would reflect time in excess of eight hours.

It is this extra time minus noncompensable time, time spent in traveling to the work station and in changing clothes, which forms the basis of plaintiffs' claims to overtime compensation.

Related to the claims of the 214 named plaintiffs are the additional claims of an unknown number of plaintiffs who are seeking compensation for time which they spent in changing clothes. These claims were not specifically raised in the complaint but are based on the fact that the plant required

these plaintiffs to change their clothes before and after work.

The date of origin and initial purpose of the early relief practice are not exactly clear. It appears, however, that the practice went into effect near the beginning of plant operations in 1943, and that its inception was due in part to employee participation in car pools which were necessitated by the plant's rural location and by the rationing of gasoline and automobile tires during World War II.

From the commencement of the early relief practice until 1955, defendant's shift employees were allowed to clock-in twenty minutes early; after 1955 this permissible time period was extended to twenty-five minutes. Adopting one of two alternative suggestions made by an investigator from the Wage and Hour Division of the United States Department of Labor, the defendant changed its reporting procedure on June 7, 1965. Exhibit E. As an alternative to the procedure adopted, it was suggested that the company inform its shift employees that they were not to make their relief until the hour. Other than making these suggestions, the Labor Department apparently took no official action in this matter. After this date, the shift employees at the Natrium Plant were only allowed to clock-in twenty minutes early and were permitted to leave the plant premises immediately upon being relieved.

It is evident from the testimony presented that there was no plant requirement that the Natrium shift employees clock-in early. The voluntary nature of the early relief practice is also indicated by plaintiffs' time cards. These cards, filed as exhibits in this action, reveal that the time a particular employee reported early would vary within the twenty-five minute time period from day to day, and that an employee's pay was not reduced if he failed to report early. An employee reporting on the hour would still receive eight hours pay for that shift.

In resisting plaintiffs' claims, defendant asserts that it neither required the shift employees to report early nor required them to immediately relieve their fellow employees in the event they did report early. Rather, the defendant maintains that the shift employees requested the extra time for personal reasons and that it permitted the employees to report early merely as a convenience to the employees. Defendant refers the Court to the above mentioned fact that a shift employee was paid for eight hours regardless of whether he reported twenty-five minutes early or on the hour. Defendant thus concludes that it would be inequitable to find the company liable for a service which it has rendered to the employees at the employees' request.

Although recognizing that they were not officially directed or requested to report early, plaintiffs allege that they were encouraged by defendant to do so. They counter defendant's equitable argument with their own—that through its acquiescence the defendant benefited from the early relief arrangement and that any decision in the company's favor would result in its unjust enrichment.

The initial legal question in this matter asks what effect the Portal to Portal Act of 1947, 29 U.S.C. § 251 et seq., has on this litigation. In particular, 29 U.S.C. § 254 provides:

> (a) Except as provided in subsection (b) of this section, no employer shall be subject to any liability or punishment under the Fair Labor Standards Act of 1938, as amended, the Walsh-Healey Act, or the Bacon-Davis Act, on account of the failure of such employer to pay an employee minimum wages, or to pay an employee overtime compensation, for or on account of any of the following activities of such employee engaged in on or after May 14, 1947—
>
> (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and

(2) activities which are preliminary to or postliminary to said principal activity or activities,

which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

(b) Notwithstanding the provisions of subsection (a) of this section which relieve an employer from liability and punishment with respect to an activity, the employer shall not be so relieved if such activity is compensable by either—

(1) an express provision of a written or nonwritten contract in effect, at the time of such activity, between such employee, his agent, or collective-bargaining representative and his employer; or

(2) a custom or practice in effect, at the time of such activity, at the establishment or other place where such employee is employed, covering such activity, not inconsistent with a written or nonwritten contract, in effect at the time of such activity, between such employee, his agent, or collective-bargaining representative and his employer.

(c) For the purposes of subsection (b) of this section, an activity shall be considered as compensable under such contract provision or such custom or practice only when it is engaged in during the portion of the day with respect to which it is so made compensable.

(d) In the application of the minimum wage and overtime compensation provisions of the Fair Labor Standards Act of 1938, as amended, of the Walsh-Healey Act, or of the Bacon-Davis Act, in determining the time for which an employer employs an employee with respect to walking, riding, traveling, or other preliminary or postliminary activities described in subsection (a) of this section, there shall be counted all that time, but only that time, during which the employee engages in any such activity which is compensable within the meaning of subsections (b) and (c) of this section.

Defendant points out that the labor contract in existence during the time period in question did not contain provisions regarding early relief. Relying primarily on Blum v. Great Lakes Carbon Corp., 418 F.2d 283 (5th Cir. 1969), cert. denied, 397 U.S. 1040, 90 S.Ct. 1361, 25 L.Ed.2d 651 (1970); Jackson v. Air Reduction Co., 402 F.2d 521 (6th Cir. 1968); and Battery Workers' Union v. Electric Storage Battery Co., 78 F.Supp. 947 (E.D.Pa.1948), cases with factual situations similar to this case, defendant argues that 29 U.S.C. § 254 bars recovery since there is neither an express contract provision nor a custom or practice which makes plaintiffs' preshift work compensable.

Plaintiffs argue on the other hand that § 254 works for the benefit of the employee and not the employer. They state the general principle to be:

[I]f . . . all of these periods of time constituted an integral part of their principal duties they are entitled to recover compensation therefor without meeting the requirements of the Portal-to-Portal Act by proving a special contract under which they were to be compensated for these periods or a custom or practice under which compensation was made therefor.

Ciemnoczolowski v. Q. O. Ordnance Corp., 228 F.2d 929, 931 (8th Cir. 1955), aff'd sub nom. Dunning v. Q. O. Ordnance Corp., 233 F.2d 902 (8th Cir. 1956), cert. denied, 352 U.S. 927, 77 S. Ct. 226, 1 L.Ed.2d 162 (1956) (citations omitted).

Emphasizing that once at his work station the relieving employee "performed activities which were an integral or indispensible part of [his] principal activity" plaintiffs contend that § 254 is inapplicable to the facts of this case.

Plaintiffs further state that an employer is liable under the Fair Labor Standards Act "for work which he knows, or has reason to believe, is being performed and the employer has the duty to see that unauthorized work is not being performed." See 29 C.F.R. §§ 785.11, 785.13 (Supp.1971). As noted by plaintiffs, the rulings, opinions and interpretations of the Wage and Hour Administrator may be considered by courts but they are not controlling. Skidmore v. Swift & Co., 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944).

Upon careful consideration of all matters presented, this Court finds defendant's position well taken. While plaintiffs have demonstrated the existence of a potential company benefit from the early relief practice, the record discloses but few instances where this potential was actually utilized. Plaintiffs firmly contend the existence of benefit can be implied from the fact that the company did not change the practice of early relief on its own initiative. Defendant disputes the assertion that it derived benefit from the early relief practice and logically explains that it chose not to change the practice because it appeared to be working satisfactorily.

Plaintiffs point out that under the old system the company might have two shifts on the plant premises near the end of a shift and the company could call on this "pool" of men to assist in the event of an emergency. This argument has been correctly classified as "tenuous" since it must be assumed that employees would naturally help on their own in event of a threat to the lives or wellbeing of fellow employees or the property of their livelihood. Jackson v. Air Reduction Co., 402 F.2d at 524.

Plaintiffs also suggest that the former practice insured a smoother operation since the relieved employee could advise the relieving employee of any difficulties experienced during the previous shift. Likewise, on occasions the oncoming employee could assist the employee on the job in correcting a problem. It would appear, however, that these two situations are inherent in shift work where, as here, the on-coming employee makes passing contact with the ' relieved employee, and it would appear that these two situations would exist regardless of the reporting practices then in effect.

It has been shown that the practice of early relief allowed some employees to conduct their first rounds and record any measurements or readings prior to the time the shift was scheduled to begin. Plant officials state that the taking of measurements before the hour was neither required nor significantly beneficial to the company.

Also, under the labor contract the plant had, and apparently still has, the authority to "tag" a relieved or soon to be relieved employee for continued work and thereby avoid "call out" pay. This authority has been exercised on occasions by the plant.

The lack of significant benefit, either solidly substantial or meritoriously intangible, when coupled with the voluntariness of the employees in reporting early, satisfies this Court that it would be inequitable to impose liability on this defendant. Under the facts here, compensation for early check-in overtime is and should be the proper subject matter of a labor contract.

The Court therefore adopts the rationale of the *Blum, Jackson* and *Battery Workers' Union* cases and finds that in the absence of an express contract provision, custom or practice providing for compensation, § 254 of the Portal-to-Portal Act precludes plaintiffs' recovery. This Court is not convinced that these three cases were erroneously decided or that they are materially distinguishable from this case.

It is also the opinion of this Court that under the facts of this case the individual claims for compensation for time spent in changing clothes should be denied.

The testimony shows that for safety reasons defendant required em-

**392**

ployees working in the chlorine mercury cell department to change into work clothes before reporting to their work stations; after being relieved these employees were required to remove their work clothes and were "encouraged" to shower before changing into their street clothes. In addition to mercury cell operators plaintiffs suggest that other employees, e. g., those in sandblasting and foam-glass, might also be required to change clothes.

Plaintiffs cite Steiner v. Mitchell, 215 F.2d 171 (6th Cir. 1954), aff'd, 350 U.S. 247, 76 S.Ct. 330, 100 L.Ed. 267 (1956), a case in which it was held that changing clothes and showering, if required by the employer for health reasons, were compensable activities, and not preliminary or postliminary activities within the meaning of the Portal-to-Portal Act. Also cited is 29 C.F.R. § 785.24(c) (Supp. 1971) which provides:

> Among the activities included as an integral part of a principal activity are those closely related activities which are indispensable to its performance. *If an employee in a chemical plant, for example, cannot perform his principal activities without putting on certain clothes, changing clothes on the employer's premises at the beginning and end of the workday would be an integral part of the employee's principal activity.* On the other hand, if changing clothes is merely a convenience to the employee and not directly related to his principal activities, it would be considered as a "preliminary" or "postliminary" activity rather than a principal part of the activity . . . . (emphasis added).

Here, however, the showering and the changing of clothes which occurred near the end of the shift were accomplished during the eight hours for which the employees were paid. Being on company time, there can be no additional compensation.

Under *Steiner* the time consumed in changing clothes before the start of the shift would clearly be compensable, but in light of the evidence that the Court has before it, the amount involved in this case would be too negligible to warrant an award of overtime compensation. One mercury cell operator estimated that it usually took him only three to four minutes to complete his change before reporting.

The Court will therefore apply the de minimis doctrine and deny the additional claims of those plaintiffs who were required to change clothes. Smith v. Cleveland Pneumatic Tool Co., 173 F.2d 775 (6th Cir. 1949); see Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946).

For the reasons stated, an order may be prepared for entry dismissing plaintiffs' cause of action.