James P. MITCHELL, Secretary of Labor, United States Department of Labor, Appellant,

v.

KING PACKING COMPANY, a Corporation, Appellee.

No. 13540.

United States Court of Appeals Ninth Circuit.

Oct. 21, 1954.

Rehearing Denied Dec. 10, 1954.

Stuart Rothman, Sol., Dep. of Labor, Bessie Margolin, John J. Babe, Asst. Sols. Dept. of Labor, Sylvia S. Ellison, William A. Lowe, Dept. of Labor, Washington, D. C., Kenneth C. Roberton, Regional Atty., James F. Scott, Asst. Regional Atty., San Francisco, Cal., for appellant.

W. H. Langroise, W. E. Sullivan, Boise, Idaho, for appellee.

Before ORR and POPE, Circuit Judges, and YANKWICH, District Judge.

ORR, Circuit Judge.

King Packing Company, a corporation, hereafter King Packing, operates a meat packing plant near Nampa, Idaho. It employs twelve or fourteen knifemen on its killing floor and nine or ten in the cutting room. These employees are employed on a regular eight-hour shift, five days a week, with an hour off at noon

**620**

and a five minute rest period both morning and afternoon. The men are compensated at hourly rates. Certain of the knives used by the men are furnished by King Packing. All other knives used by each employee are owned and furnished by him. This is a requirement incident to employment. It is a rule at the plant and a custom and usage in force there that the men sharpen their own knives outside the scheduled shift of eight hours and for this activity the men are not compensated. While King Packing has a rule permitting the knives it furnishes to be sharpened during regular shift hours, employees ordinarily sharpen them on their own time, because the exigencies of the production line make it impracticable to do so during shift hours. A room for sharpening, in which there is an emery wheel and grindstone, is furnished by King Packing. In order to keep the edge on the blade throughout the shift the men frequently steel their knives. This operation, which is a distinct process from sharpening with whetstone, emery wheel and grindstone, is performed on company time and compensated for.

The Secretary of Labor brought an action in the District Court seeking to enjoin King Packing from alleged viola-

tions of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. His complaint is bottomed on the failure to compensate for knife sharpening. King Packing contends that this time is not required to be recorded or paid for because of the provisions of Section 4 of the Portal-to-Portal Act of 1947 regarding "preliminary" or "postliminary" activities. A solution of the question posed requires a determination of whether the knife sharpening operations performed by the employees before starting or after concluding the regular eight-hour shift were "preliminary" or "postliminary" to the principal activity or activities performed by the men. The relevant portions of the controlling statutory provision, § 4 of the Portal-to-Portal Act, are set forth in note 1.[1]

▆ The Supreme Court of the United States, in the case of Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 692-693, 66 S.Ct. 1187, 1195, 90 L.Ed. 1515, gave examples of various activities which it termed "preliminary". One of these examples was "assembling and sharpening tools", the identical activity with which we are concerned in the instant case. The Portal-to-Portal Act was passed by Congress subsequent to the decision in the Mt. Clemens case with

1. Section 4 of the Portal-to-Portal Act of 1947, 29 U.S.C.A. § 251 et seq., so far as here relevant, provides as follows:

Sec. 4.

"(a) Except as provided in subsection (b), no employer shall be subject to any liability or punishment under the Fair Labor Standards Act of 1938, as amended, the Walsh-Healy Act, or the Bacon-Davis Act, on account of the failure of such employer to pay an employee minimum wages, or to pay an employee overtime compensation, for or on account of any of the following activities of such employee engaged in on or after the date of the enactment of this Act—

"(1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and

"(2) activities which are preliminary to or postliminary to said principal activity or activities, which occur either prior to the time on any particular work-

day at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

"(b) Notwithstanding the provisions of subsection (a) which relieve an employer from liability and punishment with respect to an activity, the employer shall not be so relieved if such activity is compensable by either—

"(1) an express provision of a written or nonwritten contract in effect, at the time of such activity, between such employee, his agent, or collective-bargaining representative and his employer; or

"(2) a custom or practice in effect, at the time of such activity, at the establishment or other place where such employee is employed, covering such activity, not inconsistent with a written or nonwritten contract, in effect at the time of such activity, between such employee, his agent, or collective bargaining representative and his employer."

the purpose in mind, among other things, of making non-compensable certain preliminary activities, which the Mt. Clemens case had held to be compensable. See Part I of the Portal-to-Portal Act of 1947, Findings and Policy; H.R.Rep. No. 71, 80th Congress, 1st Session (1947). Sections 2 and 3 of the Act deal with then existing claims which particularly prompted its enactment, while section 4 deals with future claims such as those involved in the instant case. If our conclusion that Congress enacted the Portal-to-Portal Act for the purpose of making non-compensable certain activities held to be compensable in the Mt. Clemens case, and in so doing used the term "preliminary" in the same sense that the Supreme Court of the United States used it, is valid, then "assembling and sharpening tools" is a "preliminary" activity. Knives used in the King packing plant are tools and knives were what the employees were sharpening.

■ The Secretary argues that the sharpening of knives is not "preliminary" or "postliminary" but rather "an integral part of a principal activity", since it is indispensable to the proper performance of the employees' work. He relies on a statement by Senator Cooper, one of the sponsors of the Portal-to-Portal Act, made during Senate debate on the bill that the term "principal activities" is "sufficiently broad to embrace within its terms such activities as are indispensable to the performance of productive work." The case of Steiner v. Mitchell, 6 Cir., 1954, 215 F.2d 171, supports this contention. In our view the terms "preliminary" or "postliminary" cannot be interpreted so as to exclude all activity "indispensable to the performance of productive work." To do so would deny effect to the intended meaning of the Portal-to-Portal Act. All of

the activities designated as "preliminary" by the Supreme Court in the Mt. Clemens case can be considered indispensable. See McComb v. C. A. Swanson & Sons, D.C.D.Neb., 1948, 77 F.Supp. 716, 733.

While, as we have said, section 4 of the Act is the controlling provision in this case, we have found it helpful in our construction of the meaning and intent of section 4 to consider cases which deal with section 2, although section 2, unlike section 4, does not explicitly refer to preliminary activities. Section 2 has been construed as referring to the activities involved in the Mt. Clemens case. In deciding cases under section 2 the courts have had occasion to describe various activities as principal or as preliminary. In support of his contention that the knife sharpening involved in the instant case is a principal activity the Secretary relies on several of these cases.[2] These cases are distinguishable. The activities treated as principal in these cases were the same or very similar to activities which the employees performed throughout their working day.

Other cases arising under section 2 describe as preliminary the activities involved in the instant case, namely, the sharpening of knives used in a meat packing plant. Market v. Swift & Co., 2 Cir., 1949, 173 F.2d 517, 520; Smith v. Cudahy Packing Co., D.C.D.Minn., 1947, 76 F.Supp. 575. The activities described as preliminary in still other cases are analogous to those here involved.[3]

The Secretary argues that there is in effect in the instant case an express provision of a written contract which prevents the employer from being relieved of liability under section 4. He relies upon the following provision in the col-

**2.** Biggs v. Joshua Hendy Corp., 9 Cir. 1950, 183 F.2d 515; United States Steel Co. v. Burkett, 4 Cir.1951, 192 F.2d 489, 491; F. W. Stock & Sons v. Thompson, 6 Cir.1952, 194 F.2d 493; Central Missouri Tel. Co. v. Conwell, 8 Cir.1948, 170 F.2d 641; Glenn L. Martin Nebraska Co. v. Culkin, 8 Cir.1952, 197 F.2d 981.

**3.** Bauler v. Pressed Steel Car Co., 7 Cir., 1950, 182 F.2d 357 (cleaning of firearms by guards); Plummer v. Minneapolis-Moline Power Implement Co., D.C.D.Minn., 1948, 76 F.Supp. 745 (same); Role v. J. Neils Lumber Co., D.C.D.Montana, 1947, 74 F.Supp. 812 (caring for tools used in logging operations).

lective-bargaining agreement in effect between King Packing and the Union. "All time worked over and above [eight hours a day and forty hours a week] shall be time and one-half." Section 2 as well as section 4 provides that an employer shall not be relieved of liability for activities made compensable by an express provision of a written contract. In so doing section 2 employs language identical to that used in section 4. In support of his contention that an express provision prevents the employer from being relieved of liability in the instant case, the Secretary relies on two cases arising under section 2: Joshua Hendy Corp. v. Mills, 9 Cir., 1948, 169 F.2d 898; Frank v. Wilson & Co., 7 Cir., 1949, 172 F.2d 712, 715, certiorari denied 337 U.S. 918, 69 S.Ct. 1159, 93 L.Ed. 1727. Each of these cases is distinguishable. In the first an employee was required to attend to his regular duties during his so-called lunch period. In the second the contract provided for time and one-half compensation for " 'employees who are required to work over 8 hours in any one day,' " and certain employees were required to be "punched in" five minutes before the regular shift time for which they were compensated.

 At the time the contract providing compensation for "all time worked" was entered into by King Packing and the Union it was the custom and practice at the plant that time spent in sharpening knives was not compensated. This existing custom should be considered in interpreting the intent of the parties in employing general language as to "time worked". The custom in effect at the plant that time spent in knife-sharpening was non-compensable was continued after the execution of the contract without complaint on the part of the Union. In construing an agreement it is useful to consider the interpretation placed upon it by the parties. The continuation of the existing custom without complaint is most conclusive that the parties in the use of general language as to payment for overtime were referring to work performed outside the eight-hour shift but of the same character as the work usually performed within the regular shift.

Judgment affirmed.