James P. MITCHELL, Secretary of Labor, United States Department of Labor, Appellant,

v.

SOUTHEASTERN CARBON PAPER COMPANY, Incorporated, Appellee.

No. 15411.

United States Court of Appeals Fifth Circuit.

June 28, 1955.

Bessie Margolin, Asst. Solicitor U. S. Dept. of Labor, Stuart Rothman, Solicitor, Washington, D. C., Beverley R. Worrell, Regional Atty., Birmingham, Ala., Sylvia S. Ellison, Acting Chief of Appellate Litigation, Morton J. Marks, U. S. Dept. of Labor, Washington, D. C., for appellant.

William K. Meadow, Griffin B. Bell, Atlanta, Ga., Spalding, Sibley, Troutman & Kelley, Atlanta, Ga., of counsel for appellee.

Before HUTCHESON, Chief Judge, and RIVES and TUTTLE, Circuit Judges.

TUTTLE, Circuit Judge.

This is an appeal from a judgment of the District Court denying an injunction and dismissing an action brought by the Secretary of Labor under § 17 of the Fair Labor Standards Act of 1938, as amended by the Fair Labor Standards Amendments of 1949 [1] to enjoin appellee from violating the overtime and record-keeping requirements of § 15(a) (2) and § 15(a) (5) of the Act in the employment of certain production workers, and from violating § 15(a) (1) by making interstate shipment of the goods produced by such workers.[2] The alleged violations were appellee's failure to pay for or record the time spent by its coating department employees in clothes-changing and bathing activities, which most of them engaged in by reason of the fact that they work with and around carbon ink.

The issue thus raised for determination by the court below was whether these activities were activities which are "preliminary to or postliminary" [3] to "the principal activity or activities which such employee is employed to perform," [4] "which occur either prior to the time on any particular workday at which such employee commences, or subsequent to

1. 29 U.S.C.A. § 217.
2. 29 U.S.C.A. § 215(a) (1), (2), and (5).
3. Portal to Portal Act of 1947, § 4(a) (2), 29 U.S.C.A. § 254(a) (2).

4. Id., § 4(a) (1), 29 U.S.C.A. § 254(a) (1).

the time on any particular workday at which he ceases, such principal activity or activities." [5]

The Government must establish, in order to prevail, that the changing from street clothes into work clothes before commencing production activities and showering or washing and changing clothes after the end of production activities for the day (where the employer and employee were in harmony on the fact that neither the workers expected to receive nor the employer expected to pay compensation for such time as a part of the principal activity of the plant) were not activities preliminary to or postliminary to "the principal activity or activities which such employee[s] [were] employed to perform".

Without benefit of court decisions interpreting these words as meaning something different from their common everyday intendment, and without reference to legislative history, it would seem mere cavilling to contend that a person engaged to manufacture carbon paper in a manufacturing plant did not have as his principal activity the doing of those things which turned the ink and paper into carbon paper, and that a statute referring to activities that might engage his attention preliminary to or postliminary to his principal activity would not include the changing into such work clothes as he used and washing or bathing to remove the soil encountered while he was engaged in such principal activity after the day's productive work was over.

However, the Secretary of Labor says these particular employees get *so* dirty and stained and the desirability to change clothes is *so* great as to them that the changing and bathing or washing is not preliminary or postliminary but *part of* "the principal activity or activities which such employee[s] [are] employed to perform". We must, therefore, put to one side our first impression that here are simple words that have plain meaning and consider the construction given them by the Secretary of Labor, because he contends in good faith that such plain and simple meaning is wrong. If he does, it is, of course, his duty to test out his theory if he deems it necessary in his administration of the law.

There is also presented an issue on this appeal arising from the application by the District Court of the provisions of § 3(*o*) of the Fair Labor Standards Act, 29 U.S.C.A. § 203(*o*). The court found that this case was controlled by an interpretation of this subsection which reads as follows:

"(*o*) Hours Worked.—In determining for the purposes of sections 6 and 7 the hours for which an employee is employed, there shall be excluded any time spent in changing clothes or washing at the beginning or end of each workday which was excluded from measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee."

The opinion of the trial court, D.C., 124 F.Supp. 525, 526, concisely stated the facts as follows:

"Defendant, a manufacturer of carbon paper, engaged in commerce and subject to this Act, had five employees in its coating department. They worked forty hours per week and were paid in excess of minimum wages required by law. In addition thereto they spent five minutes each morning after arrival on defendant's premises and before commencing their work, in changing into their work clothes. At the end of their regular shift, some of them would take a bath and change clothes, consuming twenty minutes time, others would leave for their homes without doing so.

"In an early stage of the case plaintiff sought the privilege of going on the premises and photographing these employees, the latter objected to being photographed, and

5. Id., § 4(a) (2), 29 U.S.C.A. § 254(a) (2).

at the Court's suggestion, consented to by all counsel, the Court went personally to defendant's plant just prior to four o'clock p. m. on a hot July day, and observed two employees working in the coating department at their machines. Their clothes were covered with grime and dirt, their bodies with perspiration and smears of ink, and it was apparent that, for their own pleasure, pride and convenience, a bath and change of clothes was necessary. For the economic welfare of their employer such a bath and change was immaterial, there were no dangerous acids or other matters in their clothing, nor was any particular type of clothing necessary in connection with their work."

The Government adds the statement that "the soil and stain from the ink would ruin the employees' clothes, the upholstery of their automobiles, and other things with which they might come into contact. They would thus incur expenses which they could ill afford."

We think these statements adequately cover the evidentiary facts in the case, except for the statement of the trial court in his opinion, reported at 124 F.Supp. 525, at page 527, as to the terms of employment and the custom as to whether the clean-up time was compensable:

"As it appears in the instant case that the employees were not organized, that they did not have with their employer a written or express 'collective-bargaining agreement applicable to the particular employee', question arises whether time spent in changing clothes or washing is excluded. It does appear, however, that there was a custom between employer and employees that such time should not be included, the employees taking the witness stand disclaimed any such contention, it appeared that they had never claimed the same nor agreed to the same, and apparently were utterly indifferent upon the question. They seemed more amused at the entire proceedings than inter-ested therein, and absolute peace and harmony seemed to prevail upon their relationships to the employer."

■ We think the question whether the time spent in changing clothes and washing up is broader than as viewed by the trial court. We do not agree that this employment was expressly exempted under § 3(*o*) because it did not meet the requirements there that the custom of non-payment must arise "under a bona fide collective-bargaining agreement applicable to the particular employee." To come within this exemption the conditions must exist. As pointed out in Judge Hooper's opinion, there was no collective-bargaining agreement. However, we agree with the trial judge that if the answers to this question were dependent solely on § 3(*o*) "there would be a clear discrimination against the organized employees and in favor of employees which [sic] were not organized."

■ We conclude that compensation for these activities is prohibited under § 4(a) (1) and (2) of the Portal to Portal Act, supra, since these are clearly "activities which are preliminary to or postliminary to said principal activity * * which such employee is employed to perform".

As stated above, this seems the clear and plain meaning of the words. But the Government contends that the activities here which might ordinarily be preliminary or postliminary to the principal activities are so necessary to enable the employees to return to their ordinary personal pursuits without inconvenience or expense that they become thereby part of the principal activity which the employees are employed to perform.

The two principal cases relied on by the parties are Steiner v. Mitchell, 6 Cir., 215 F.2d 171, asserted by the Secretary to be authority for his position, and Mitchell v. King Packing Co., 9 Cir., 216 F.2d 618, equally strongly put forward by appellee.

In the Steiner case, which dealt with changing clothes and showering of employees in a plant manufacturing wet

storage batteries, the Court of Appeals for the Sixth Circuit said:

"It is undisputed that the manufacturing process in which appellants' employees are engaged requires the use of various chemicals and chemical compounds, including sulphuric acid, lead metal, lead oxide, lead sulphate and lead peroxide, which create conditions which are dangerous to the health of the workers. * * *

"The only question presented for determination is whether the activities of the employees of appellants in changing clothes and taking shower baths at the plant, *on account of the hazardous conditions inherent in the nature of their work,* are so closely related to the duties which they are employed to perform as to constitute an integral part thereof and should be classed as 'principal' rather than 'preliminary' and 'postliminary' activities within the meaning of Section 4(a) (2) of the Portal-to-Portal Act of 1947". (Emphasis supplied.) 215 F.2d at page 172.

In the King Packing Co. case the time which the Secretary claimed was compensable was spent by employees who were meat cutters in sharpening their knives outside the regularly scheduled shift. In commenting on the distinction between the *indispensability* of an activity in connection with an employee's principal activities and its *preliminary* character, the opinion of the Ninth Circuit Court said:

"If our conclusion that Congress enacted the Portal-to-Portal Act for the purpose of making non-compensable certain activities held to be compensable in the Mt. Clemens case [Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515], and in so doing used the term 'preliminary' in the same sense that the Supreme Court of the United States used it, is valid, then 'assembling and sharpening tools' is a 'preliminary' activity. * * * In our view the terms 'preliminary' or 'postliminary' cannot be interpreted so as to exclude all activity 'indispensable to the performance of productive work.' To do so would deny effect to the intended meaning of the Portal-to-Portal Act. All of the activities designated as 'preliminary' by the Supreme Court in the Mt. Clemens case can be considered indispensable. See McComb v. C. A. Swanson & Sons * * * D.C., 77 F.Supp. 716, 733." Mitchell v. King Packing Co., 216 F.2d at page 621.

Appellees here, we think, correctly point out that this King case is a stronger one for compensability than is the one here presented; for, as the court there recognized, the sharpening of the knives was a necessary or indispensable activity, even though preliminary. Here the clothes changing and bathing, while highly desirable, cannot be said to be indispensable to the effective performance of the work for which these employees were hired.

█ Both the Steiner case, 349 U.S. 914, 75 S.Ct. 603, and the King case, 349 U.S. 914, 75 S.Ct. 605, are now before the Supreme Court, certiorari having been granted April 25, 1955. Because, however, we feel action by that Court in neither of those cases would control here, we proceed to our decision based on the facts here present. Just as the Supreme Court stated in the Portal-to-Portal cases that a determination of whether clothes changing and walking time, and like activities, were, prior to the enactment of the Portal-to-Portal Act, supra, within the work week and thus compensable, was a question of fact,[6] so here the determination as to whether the same ac-

---

6. The Court said in Skidmore v. Swift & Co., 323 U.S. 134, at page 136, 65 S.Ct. 161, at page 163, 89 L.Ed. 124: "Whether in a concrete case such time falls within or without the Act is a question of fact to be resolved by appropriate findings of the trial court."

tivities are within the term "principal activities" is one of fact.

Another case strongly supporting appellees' contention is Ciemnoczolowski v. Q. O. Ordnance Corp., 8 Cir., 1955, 228 F.2d 913, affirming 119 F.Supp. 793. There the Court of Appeals for the Eighth Circuit held that the evidence supported the findings of fact of the trial court that the clothes changing and showering activities were not part of the principal activities of the employees, even though the employees there were required to conform to clothing standards to satisfy safety requirements of the employer, a manufacturer of high explosives. This, too, is a much stronger case for the compensability of such time than is here before the court.

Other lower court decisions are cited, as is also considerable legislative history, in the briefs of both parties.[7] Suffice it to say that neither court decisions nor the somewhat confused legislative history add anything to the solution of the problem before us. We consider this a simple fact question. Even assuming there may be activities actually performed before and after the regular productive shift that are so closely integrated and so essential and of such direct benefit to the employer as to cause them to be considered as a part of the principal activity which the employees are employed to perform, the correctness of which assumption we do not here decide, nevertheless on ample grounds, including a personal view of the plant and the operation itself, the trial judge said in formal Finding of Fact No. 2:

> "The five employees involved herein at all times were paid in excess of minimum amounts provided by law for time actually expended in defendant's coating department. They consumed five minutes in changing

clothes before beginning work and some of them, twenty minutes in taking a bath and changing clothes upon leaving work, all of this being for their own convenience, not being required by the employer and not being necessary for the performance of their duties for the employer."

Based on this finding, the court then decided as a conclusion of law that:

> "Time expended by employees in bathing and changes is not included as a part of the work week of the employees and is not compensable under the Fair Labor Standards Act."

This conclusion is clearly justified by the evidence and by the Findings of Fact by the Court. The Court's further conclusion that, if otherwise compensable, this time is excluded by virtue of § 3(o), was unnecessary to his judgment dismissing the action and denying the injunction.

The judgment is therefore

Affirmed.

---

7. See especially to support appellees' view, McComb v. C. A. Swanson & Sons, D.C., 77 F.Supp. 716. Appellant distinguishes the other cases cited by appellee and by the trial court on the ground that they construed and applied only § 2 of the Portal-to-Portal Act, supra, which appellant contends is different in language and purpose from § 4 here in is-

sue. Section 2 wiped out all existing liability for compensation for any activities which were not made compensable by the agreement or custom between the parties. Section 4, as we have seen, established for the future the formula of preliminary and postliminary to the principal activity.