Gary HELLMERS, Plaintiff,

v.

TOWN OF VESTAL, NEW
YORK, Defendant.

No. 96–CV–882.

United States District Court,
N.D. New York.

July 9, 1997.

Chamberlain & Kaufman, Jeffrey Chamberlain, Albany, NY, for Plaintiff.

Twining, Nemia & Steflik, Joseph J. Steflik, Jr., Binghamton, NY, for Defendant.

## MEMORANDUM-DECISION & ORDER

McAVOY, Chief Judge.

### I. BACKGROUND [1]

Plaintiff Gary Hellmers brings suit under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, against his employer to recover overtime compensation. Hellmers asserts, *inter alia*, that as a Town of Vestal Police Officer, he is entitled to overtime compensation for "off-duty" time spent caring and maintaining his police dog; that the statute of limitations is three years in connection with Plaintiff's canine-activities; that the Defendant's restrictions on the use of compensatory time violates the FLSA; and that he is entitled to liquidated damages under the FLSA.

Hellmers, a police officer employed by the Town of Vestal, served as a police dog handler and member of the canine ("K–9") unit of the Vestal Police Department ("VPD") from 1983 until July 1996. During this period, Hellmers reported to his regular shifts with his police dog "Bry", a long-haired German Shepherd. Bry was a "utility" or "patrol" dog, as well as a tracking, evidence, narcotics, and cadaver detection police dog.

From the time Hellmers joined the K–9 unit until it was disbanded in July, 1996, Bry lived with Hellmers at his residence, both in the home and in a kennel located outside the home. During that time, Hellmers was responsible for the care, training, and maintenance of the police dog, and Defendant paid for the dog food, shampoo, and veterinary bills. In connection with the care, training, and maintenance of the police dog, Hellmers avers that he performed the following canine activities during "off-the-clock" time: grooming, bathing, exercising, cleaning the dog's living quarters, feeding and watering, training, and cleaning equipment.

Hellmers also asserts that he performed non-canine duties during off-the-clock time

---

1. Unfortunately, the Court's task in laying a factual predicate for the instant motions is made more difficult because Defendant has not submitted a proper Local Rule 7.1(f) Statement. Instead of providing a "short and concise statement of the material facts as to which the moving party contends there is no genuine issue, with specific citations to the record," *see* N.D.N.Y.L.R. 7.1(f), Defendant simply lists the paragraph numbers from Plaintiff's 7.1(f) Statement. Accordingly, the following facts are taken from Plaintiff's 7.1(f) Statement.

that he was not compensated for in violation of the FLSA. These non-canine activities included: driving to and from regular shifts in marked police vehicles; performing police work immediately before his regularly scheduled shifts; making and receiving police telephone calls from home; preparing police paperwork at home; cleaning police uniforms; and cleaning his police firearm.

During the week of August 24, 1993, Hellmers states that he informed VPD Chief of Police Kenneth Stica that he thought he was entitled to compensation for the off-the-clock time spent dealing with the police dog. When no changes were made to the VPD's compensation practices, Hellmers filed the instant suit.

Presently before the Court are Defendant's Motion and Plaintiff's Cross–Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Essentially, the parties seek summary judgment on the issue of whether the time spent performing specific activities "off-the-clock" count as "hours worked" under the FLSA. If these hours count as hours worked under the FLSA, then to the extent these hours exceed forty hours per week, Plaintiff seeks time-and-a-half pay for the overtime. Plaintiff also requests summary judgment on the issue of whether he is entitled to liquidated damages under the FLSA.

## II. DISCUSSION

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, a court may grant summary judgment if it appears "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). It is the substantive law that will determine what facts are material to the outcome of a case. *See Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511.

Initially, the moving party has the burden of informing the court of the basis of its motion. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). If the moving party satisfies its burden, the burden then shifts to the non-

moving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The Court must then resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). However, the non-moving party must do more than simply show "that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356. Only when the Court concludes that no rational finder of fact can find in favor of the non-moving party should summary judgment be granted. *Gallo v. Prudential Residential Servs., Ltd.,* 22 F.3d 1219, 1223 (2d Cir.1994).

Furthermore, in an effort to aid the disposition of summary judgment motions, the Local Rules of the Northern District of New York require:

On a motion for summary judgment pursuant to Fed.R.Civ.P. 56, there shall be annexed to the notice of motion a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue, **with specific citations to the record where such facts are set forth.** The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue, **with specific citations to the record where the factual issues arise.** All material facts set forth in the statement served by the moving party shall be deemed admitted unless controverted by the statement served by the opposing party. The motion for summary judgment shall be denied if the moving party fails to file and serve the statement required by this paragraph.

N.D.N.Y.L.R. 7.1(f) (emphasis added). In the absence of this mandatory short and concise statement, the motion shall either be denied or the facts deemed admitted.

Here, Defendant has not complied with Rule 7.1(f). Defendant's Rule 7.1(f) Statement simply lists the paragraph numbers

from Plaintiff's 7.1(f) Statement. For example, Defendant states: "The defendant, Town of Vestal, contests and disagrees with the following paragraphs of the Statement of Uncontested Facts submitted by the plaintiff— 5, 6, 7, 8, 9, 10, 11, 12, 15, 16, 17, 18, 19, 20, 23, 25, 28, 29, 30, 31, 32, 33, 36, 37, 38, 39, 40, 41, and 42." (Def's Statement of Uncontested and Contested Facts at ¶ 2). Nowhere in its 7.1(f) Statement does Defendant provide a short and concise statement of the material facts it contends are in dispute, nor does Defendant provide "specific citations to the record where the factual issues arise." N.D.N.Y.L.R. 7.1(f).

If compliance with Local Rule 7.1(f) can be accomplished with such a minimal statement, any benefits inuring from Rule 7.1(f) would be completely eviscerated. Rule 7.1(f) was drafted to force litigants to focus sharply on the specific factual issues in dispute. By doing this, and providing precise citation to the record where the disputed facts are located, both the parties and the Court can move immediately to the gravamen of the case; absent this forced focus, the parties' briefs can remain, as is often the case, as "two ships passing in the night."

Thus, because Defendant has failed to comply with Rule 7.1(f), its motion for Summary Judgment is DENIED. Furthermore, as evidenced by the submissions of the parties, there is little agreement as to the applicable law in this case. For this reason, the Court will address some of the legal standards at issue to provide the parties with guidance at trial.

### A. Were Plaintiff's Activities Compensable under the FLSA?

Section 207 of the FLSA provides in relevant part that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of [forty] hours . . . at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a). The purpose of the FLSA, passed in 1938, was to "guarantee[ ] compensation for all work or employment engaged in by employees covered by the Act." *Tennessee*

*Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 602, 64 S.Ct. 698, 705, 88 L.Ed. 949 (1944). However, under the FLSA "[e]mployees are entitled to compensation only for 'work'." *Reich v. New York City Trans. Auth.*, 45 F.3d 646, 651 (2d Cir. 1995). While Congress made clear that employers are required to compensate employees, Congress left unclear "the contours of the type of 'work' or 'employment' that merit[s] such compensation." *Reich*, 45 F.3d at 649. In 1944, the Supreme Court defined the term "work" as an activity involving "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Tennessee Coal*, 321 U.S. at 598, 64 S.Ct. at 703. Two years later, the Court further interpreted the FLSA to require compensation for other activities such as walking from the factory gate to the workbench and changing into work clothes. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692–93, 66 S.Ct. 1187, 1194–95, 90 L.Ed. 1515 (1946).

The expansive reading of the FLSA in *Anderson v. Mt. Clemens Pottery* triggered a 1947 amendment to the FLSA titled the Portal–to–Portal Act, 29 U.S.C. § 251 *et seq.* Congress passed the Portal–to–Portal Act in order to "relieve employers from liability for preliminaries, most of them relatively effortless, that were thought to fall outside the conventional expectations and customs of compensation." *Reich*, 45 F.3d at 649. Under the Portal–to–Portal Act, employees are not entitled to FLSA compensation for "walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform" or for "activities which are preliminary to or postliminary to said principal activity or activities." 29 U.S.C. §§ 254(a)(1)–(2).

The shift in congressional focus from the term "work" to the slightly less ambiguous phrase "principal activity or activities that an employee is hired to perform," has done little to clarify the present issue. As a result, in *Steiner v. Mitchell*, 350 U.S. 247, 76 S.Ct. 330, 100 L.Ed. 267 (1956), the Supreme

Court held that a given activity constitutes a "principal activity," as opposed to a noncompensable preliminary or postliminary task, if it is "an integral and indispensable part of the principal activities for which covered workmen are employed." 350 U.S. at 256, 76 S.Ct. at 335; see also *Reich*, 45 F.3d at 649–50.

After reviewing the history of the FLSA and cases interpreting its compensation provisions, the Second Circuit recently concluded in *Reich v. New York City Transit Authority:*

> The more the preliminary (or postliminary) activity is undertaken for the employer's benefit, the more indispensable it is to the primary goal of the employee's work, and the less choice the employee has in the matter, the more likely such work will be found to be compensable. Commuting and similar activities are generally not compensable. The ability of the employer to maintain records of such time expended is a factor. And, where the compensable preliminary work is truly minimal, it is the policy of the law to disregard it.

45 F.3d at 650. The *Reich* court also noted that the Portal–to–Portal Act does not exempt from compensation "real work assignments" that occur outside the main part of the workday. *Reich*, 45 F.3d at 651.

Consequently, an activity constitutes "work," and is compensable under the FLSA, if it involves "physical or mental exertion (whether burdensome or not)," or the loss of an employee's time, that is "controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Reich*, 45 F.3d at 651 (*quoting Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 64 S.Ct. 698, 88 L.Ed. 949 (1944)).

### i. Canine–Related Activities

■ A number of courts have found, as a general matter, that time spent by a police officer caring for or training his or her assigned police dog during that officer's off-duty hours constitutes compensable work time. *See Holzapfel v. Town of Newburgh, N.Y.*, 950 F.Supp. 1267, 1273 (S.D.N.Y.1997); *Andrews v. DuBois*, 888 F.Supp. 213, 216–17 (D.Mass.1995); *Levering v. District of Columbia*, 869 F.Supp. 24, 26–27 (D.D.C.1994); *Truslow v. Spotsylvania County Sheriff*, 783 F.Supp. 274, 277–79 (E.D.Va.1992); *Reich*, 45 F.3d at 650 (dicta).

As the Second Circuit recently noted in dicta, these activities constitute work because feeding, training, exercising, and otherwise ministering to the needs of a canine unit dog are, at least up to a point, "indispensable to the dog['s] well-being and to the employer's use of the dog[ ] in its business." *Reich*, 45 F.3d at 650; *see also Nichols v. Chicago*, 789 F.Supp. 1438, 1442 (N.D.Ill.1992) ("in order for the canine patrol officer to properly perform his or her principal activity of canine patrol, the canine portion of the work team must be in proper working order"); *Holzapfel*, 950 F.Supp. at 1273 ("Because a basic level of care and attention is essential to ensure a police dog's health and well-being, some off-duty efforts on the part of a K–9 officer to maintain his or her dog clearly amount to 'work.' ").

Here, Plaintiff is seeking compensation for the following canine related activities: grooming, bathing, exercising, feeding and watering, training, cleaning the dog's living quarters, cleaning the vehicle used to transport the dog, cleaning equipment, making and receiving dog related telephone calls, and preparing police paperwork connected with canine duties.

As to the specific activities Plaintiff allegedly performed, clearly time spent grooming, bathing, exercising, cleaning, and training the police dog is "required by the employer and is pursued necessarily and primarily for the benefit of" the VPD, and is thus "work" under the FLSA. *See, e.g., Reich*, 45 F.3d at 650 (stating in dicta that "feeding, training, and walking are work and are indispensable to the dogs' well-being and to the employer's use of the dogs in its business."); *Andrews*, 888 F.Supp. at 217 (feeding, grooming, and walking); *Truslow*, 783 F.Supp. at 279 (cleaning, grooming, exercising, and training).

■ Plaintiff's other canine-related activities, such as making and receiving dog related telephone calls and preparing police pa-

perwork connected with canine duties, are less clearly activities that are "controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Reich,* 45 F.3d at 651. Moreover, it is unclear whether these activities are any different than Plaintiff's other, non-canine police work that are discussed *infra.* Because there is insufficient evidence to make this determination, the Court will reserve on the issue whether Plaintiff's remaining canine activities are compensable under the FLSA.

### ii. Non–Canine Activities

■ Hellmers also asserts that he performs non-canine duties during off the clock time for which he is not compensated in violation of the FLSA. These non-canine activities include: driving to and from regular shifts in marked police vehicles; performing police work immediately before his regularly scheduled shifts; cleaning his police firearm and vehicle; making and receiving police telephone calls from home; preparing police paperwork at home; and cleaning police uniforms.

Defendant correctly notes that as a general rule, the time spent transporting police dogs between home and work is not compensable under the FLSA. *See, e.g., Reich,* 45 F.3d at 648, 652. However, Plaintiff attempts to distinguish his situation by arguing that he drives to work in a marked police car in his official uniform, must sign on with the police department at all times, and must be ready and able to respond as a police officer from the moment he leaves his home.

As previously discussed, under the Portal-to–Portal Act, employees are not entitled to FLSA compensation for "walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform." 29 U.S.C. § 254(a)(1). Nowhere in the Portal–to–Portal Act does there appear to be an exemption for commuting time spent in marked police cars. Absent such a

provision by congress, the Court is not inclined to create one here.[2]

■ Plaintiff next argues that he is entitled to compensation for time spent performing police work immediately before his regularly scheduled shifts, cleaning his police firearm, and cleaning his police vehicle. In determining whether Hellmers is entitled to compensation for these activities, the FLSA provides little definitive guidance. As the Second Circuit recently noted:

> While no clear standards emerge, certain generalizations can be drawn from these authorities. The more the preliminary (or postliminary) activity is undertaken for the employer's benefit, the more indispensable it is to the primary goal of the employee's work, and the less choice the employee has in the matter, the more likely such work will be found to be compensable.

*Reich,* 45 F.3d at 650. However, it is clear that an integral and indispensable activity may well take place before or after an employee's regular work hours. *See, e.g., Steiner v. Mitchell,* 350 U.S. at 247, 76 S.Ct. at 330 (changing clothes and showering an integral and indispensable part of the principal work for workers who use toxic materials); *Mitchell v. King Packing Co.,* 350 U.S. 260, 76 S.Ct. 337, 100 L.Ed. 282 (1956) (time spent by butchers sharpening their knives an integral and indispensable part of principal activities); *Barrentine v. Arkansas–Best Freight Sys., Inc.,* 750 F.2d 47 (8th Cir.1984) (truck drivers' time spent on pre-shift safety inspections is an integral and indispensable part of the principal work activity). In contrast, preliminary or postliminary activities are activities spent predominantly in the employees' own interests. *See Reich,* 45 F.3d at 651. Activities are classified as preliminary or postliminary if they are "undertaken for [the employees'] own convenience, not being required by the employer and not being necessary for the performance of their duties for the employer." *Dunlop v. City Elec., Inc.,* 527 F.2d 394, 398 (5th Cir.1976) (*quoting Mitchell v. Southeastern Carbon Paper Co.,* 228 F.2d 934 (5th Cir.1955)).

---

**2.** However, Plaintiff likely would be entitled to compensation if during his commute to work he was required to respond to a police emergency

or other police activity not incidental to his transporting himself to work.

■ Based on the uncontested facts in Plaintiff's Rule 7.1(f) Statement, the Court concludes that Hellmers' cleaning of his police firearm and cleaning of his police vehicle were not activities performed for his own convenience, but were required by his employer and were an integral and indispensable part of the principal work activity of the VPD. Thus, these activities are considered "work" under the FLSA.

■ Plaintiff's assertion that he is entitled to compensation for time spent performing police work immediately before his regularly scheduled shifts, making and receiving police telephone calls from home, and preparing police paperwork at home, however, are less clearly activities that are "controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Reich,* 45 F.3d at 651. Because there is insufficient evidence to decide this issue, the Court will reserve on the issue of whether Plaintiff's performing police work immediately before his regularly scheduled shifts, making and receiving police telephone calls from home, and preparing police paperwork at home are compensable under the FLSA.

■ Finally, Plaintiff argues that he should be compensated for time spent cleaning and maintaining his police uniform. While Plaintiff is correct that uniform cleaning is a type of activity that is generally compensable under the FLSA, *see Treece v. City of Little Rock, Ark.,* 923 F.Supp. 1122, 1127 (E.D.Ark.1996), in this instance the VPD, pursuant to Article 15(A) of the Collective Bargaining Agreement between the Town of Vestal and it police officers, specifically provides its officers with a stipend for "either dry cleaning or purchasing new uniforms." (Def's Ex. A). Accordingly, Plaintiff is not entitled to overtime compensation for time spent cleaning and maintaining his police uniform.

### iii. Reasonableness of Plaintiff's Activities

■ Defendant argues that it does not necessarily follow that all off-duty activities, no matter how excessive, are sufficiently related to the officer's principal responsibilities or beneficial to that officer's dog as to warrant overtime compensation. The issue of whether a canine officer is entitled to payment for time spent in off-duty, dog-care activities, or whether the employee must first demonstrate that such efforts were reasonably necessary, has not been squarely addressed by the courts. However, confronting this same question, the Southern District of New York recently noted in *Holzapfel v. Town of Newburgh, N.Y.,* 950 F.Supp. 1267 (S.D.N.Y.1997), that "outside the canine context, at least two courts have concluded that in order to be compensable, the amount of overtime an employee claims to have spent on efforts related to the employee's principal activities must be reasonable." 950 F.Supp. at 1273; *see also Reich v. IBP, Inc.,* 38 F.3d 1123, 1127 (10th Cir.1994)).

As the court reasoned in *Amos v. United States,* 13 Cl.Ct. 442 (Cl.Ct.1987):

> To rule otherwise would run the risk of rewarding plaintiffs for lack of diligence in getting and returning the equipment and in walking to and from this work station and conversely, penalizing those of the plaintiffs who may have taken less than a reasonable amount of time in doing these activities.

*Id.* at 450. Moreover, it makes intuitive sense to this Court that in order for an activity to be "an integral and indispensable part of the principal activities for which covered workmen are employed," *Steiner,* 350 U.S. at 256, 76 S.Ct. at 335; *see also Reich,* 45 F.3d at 649–50, the amount of overtime an employee claims to have spent must be reasonable in relation to the principal activity itself.

Accordingly, the Court finds *Holzapfel* and *Amos* to be persuasive on this issue and concludes that if an employee's activities (both canine and non-canine), even though of a type that would generally be compensable, exceed reasonable limits, they cannot be considered integral and necessary, and therefore do not constitute "work" under the FLSA.

■ Returning to the facts here, the Court concludes that whether and to what extent Plaintiff's off-duty canine activities and non-canine activities were reasonably

necessary is an issue that the parties plainly dispute and is thus properly left to be resolved based on the evidence presented at trial. *Accord, Holzapfel,* 950 F.Supp. at 1275 (finding factual issue as to reasonableness of off-duty activities).

## B. Did Defendant Suffer or Permit Plaintiff to Work Off–The–Clock?

In opposition to Plaintiff's Summary Judgment Motion, Defendant asserts that Hellmers should have completed the work, for which he seeks overtime compensation, within his regular work day. As plaintiff observes, however, the regulations caution that work which an employer suffers or permits an employee to engage in outside of normal hours is compensable. *See* 29 C.F.R. § 785.11. An employer is not free to refuse to pay overtime on the ground that the employee could have completed the work during regular hours and thus need not have resorted to working overtime. *See* 29 C.F.R. § 785.11; *Reich v. Department of Conservation & Natural Resources,* 28 F.3d 1076, 1082 (11th Cir.1994) ("The reason an employee continues to work beyond his shift is immaterial; if the employer knows or has reason to believe that the employee continues to work, the additional hours must be counted."). Nevertheless, with respect to work performed away from the job site or at home, the employer must credit an employee's claim for hours worked only "if the employer knows or has reason to believe that work is being performed." 29 C.F.R. § 785.12; *see also Forrester v. Roth's I.G.A. Foodliner, Inc.,* 646 F.2d 413, 414 (9th Cir.1981).

Defendant argues here that Plaintiff never submitted time sheets requesting the overtime he now claims entitlement to. However, addressing this very issue, the court in *Holzapfel* stated that

> even in the absence of time sheets or other documentation apprising the Town that plaintiff worked the overtime he now claims, the defendants' constructive knowledge might be imputed from evidence demonstrating the police department's awareness that plaintiff's canine responsibilities were so extensive that he could not have completed them during his regular

shift and the two hours per week of overtime the Town allotted.

950 F.Supp. at 1276. Similarly, in *Newton v. City of Henderson,* 47 F.3d 746 (5th Cir. 1995), the Fifth Circuit indicated that had the evidence clearly established the chief of police's awareness of the plaintiff police officer's need to work overtime in order to meet the demands of the plaintiff's undercover assignment, knowledge of plaintiff's off-duty efforts could justifiably have been attributed to the police department. 47 F.3d at 749.

Moreover, the employer bears the burden of preventing overtime work when such work is not desired. *See* 29 C.F.R. § 785.13 ("In all cases it is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them."). As the Eleventh Circuit stated in *Reich v. Department of Conservation & Natural Resources,* 28 F.3d 1076 (11th Cir. 1994), "an employer's knowledge is measured in accordance with his 'duty . . . to inquire into the conditions prevailing in his business.'" 28 F.3d at 1082 (*quoting Gulf King Shrimp Co. v. Wirtz,* 407 F.2d 508, 512 (5th Cir.1969)).

However, the duty to inquire is not unlimited, particularly where, as here, the employer has a policy against overtime and requires its employees to submit overtime compensation claims. *See Holzapfel,* 950 F.Supp. at 1277. In *Newton,* the Fifth Circuit cautioned:

> The fact that the [chief of police] had access to the Task Force's activities means that perhaps he could have known that [plaintiff] was working overtime hours, but the question here is whether he should have known. In light of the fact that [the chief of police] explicitly ordered [plaintiff] not to work overtime and in light of the fact that [plaintiff] admits that he never demanded payment for overtime already worked, it is clear that access to information regarding the Task Force's activities, standing alone, is insufficient to support the conclusion that the City should have known that [plaintiff] was working overtime.

47 F.3d at 749. The question then is whether an employer's inquiry was reasonable in light of the circumstances surrounding the employer's business, including existing overtime policies and requirements.

 Returning to the facts here, Defendant argues that it had no knowledge that Hellmers was engaged in off-duty activities that might be compensable under the FLSA. Furthermore, Defendant asserts that it exercised subjective and objective good faith when it directed Hellmers to submit requests for overtime and relied on his submissions. (*See* Stica Aff. ¶¶ 15–16). In light of the apparent factual dispute as to Defendant's knowledge and duty to inquire, the issue of whether the Town of Vestal permitted or suffered Plaintiff's off-the-clock activities is appropriately left for trial.

### C. Is Plaintiff Entitled to a Three Year Statute of Limitations?

 Under 29 U.S.C. § 255(a), a cause of action under the FLSA ordinarily must "be commenced within two years after the cause of action accrued." Furthermore, "a cause of action under the [FLSA] for unpaid minimum wages or unpaid overtime compensation and for liquidated damages 'accrues' when the employer fails to pay the required compensation for any workweek at the regular pay day for the period in which the workweek ends." 29 C.F.R. § 790.21(b).

However, the statute of limitations is extended to three years where the cause of action arises "out of a willful violation" of the Act. 29 U.S.C. § 255(a). To establish a "willful violation" of the FLSA, the employee must prove "that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133, 108 S.Ct. 1677, 1681, 100 L.Ed.2d 115 (1988); *see also Reich v. Waldbaum, Inc.,* 52 F.3d 35, 39 (2d Cir.1995). As the Supreme Court stated in *McLaughlin v. Richland Shoe Co.,* "[t]he word 'willful' is widely used in the law, and, although it has not by any means been given a perfectly

consistent interpretation, it is generally understood to refer to conduct that is not merely negligent." 486 U.S. at 133, 108 S.Ct. at 1681.

Here, Plaintiff seeks a ruling that Defendant is liable for a "third year" only in connection with the canine activities he performed after September 1, 1993. Specifically, Plaintiff asserts that by September 1, 1993, the Chief of Police had been advised by Hellmers and by a second K–9 officer that "dog related" activities were being performed off-the-clock in violation of the FLSA. (*See* Plf's Mem. of Law at 27). In response, Defendant states that it was never advised of either the nature or scope of the alleged off-duty canine activities at issue here, and that Defendant believed Hellmers was being fully and properly compensated. (*See* Stica Aff. ¶ 18). Accordingly, the Court finds that there is a genuine issue of material fact as to whether Defendant willfully violated the FLSA and thus whether a two or three year statute of limitations applies in this case.

### D. Compensatory Time

 Plaintiff also contends that Defendant's restrictions on his use of compensatory time violate the FLSA. Specifically, Plaintiff argues that his compensatory time, earned in lieu of cash wages for overtime, is improperly restricted in that permission to use compensatory time is conditioned on there being a sufficient number of officers on duty to provide shift coverage, that Plaintiff is restricted from using more than eight hours of accrued compensatory time in any one week, and that Plaintiff is required to take off compensatory time when he has accumulated more than 24 hours.

The FLSA allows public agencies to provide compensatory time in lieu of cash overtime pay if an employee agrees to such an arrangement either through collective bargaining or some other agreement before starting employment. *See* 29 U.S.C. § 207(*o*).[3] Essentially, employees are al-

---

**3.** 29 U.S.C. § 207(*o*) provides, in relevant part:
(1) Employees of a public agency which is a State, a political subdivision of a State, or an

interstate governmental agency may receive, in accordance with this subsection and in lieu of overtime compensation, compensatory time off

lowed to "bank" compensatory time in what amounts to an employee-owned savings account of compensatory time. Section 207(*o*)(5) specifically gives the employee the right of access to and control of the use of that banked time subject only to the employer's right to deny requested uses by the employee that would unduly disrupt the employer's operation. *See* 29 U.S.C. § 207(*o*)(5)(B).[4]

Although few courts have had occasion to interpret the precise contours of an employee's right to use compensatory time, the Eighth Circuit recently addressed this issue in *Heaton v. Moore*, 43 F.3d 1176 (8th Cir. 1994). In *Heaton*, the court stated:

In our view, section 207(*o*)(5) clearly allocates the relative rights of employees and employers to control the use of accrued compensatory time. An employee has the right to use the accrued time as the employee sees fit subject only to the employer's limited right to deny an employee's request if it would unduly disrupt the employer's operations. Congress has not provided the employer with any further right to unilaterally control or to force the employee's use of compensatory time.

43 F.3d at 1180.

In light of the clear wording of section 207(*o*)(5), which specifically gives the employee the right of access to and control of the use of that banked time subject only to the employer's right to deny requested uses by the employee that would unduly disrupt the employer's operation, the Court will not expand an employer's power to condition use of compensatory time beyond that which congress has provided. Accordingly, the Court holds that an employee has the right to use accrued compensatory time as the employee sees fit subject only to the employer's limited right to deny an employee's request if it would unduly disrupt the employer's operations.

■■■ Here, Plaintiff argues that his compensatory time is improperly restricted in that permission to use compensatory time is conditioned on there being a sufficient number of officers on duty to provide shift coverage, that Plaintiff is restricted from using more than eight hours of accrued compensatory time in any one week, and that Plaintiff is required to take off compensatory time when he has accumulated more than 24 hours. In opposition, Defendant submits the affidavit of Chief of Police Kenneth Stica who states that "[r]equests for compensatory time are granted depending on the normal schedule of work, anticipated peak workloads, emergency requirements, the availability of qualified substitute staff, and undue disruption of police operations." (Stica Aff. ¶ 5).

Although Defendant's factual opposition is minimal, the Court must nevertheless resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsu-*

---

at a rate not less than one and one-half hours for each hour of employment for which overtime compensation is required by this section.

(2) A public agency may provide compensatory time under paragraph (1) only—

(A) pursuant to—

(i) applicable provisions of a collective bargaining agreement, memorandum of understanding, or any other agreement between the public agency and representatives of such employees; or

(ii) in the case of employees not covered by subclause (i), an agreement or understanding arrived at between the employer and employee before the performance of the work; and

(B) if the employee has not accrued compensatory time in excess of the limit applicable to the employee prescribed by paragraph (3).

(5) An employee of a public agency which is a State, political subdivision of a State, or an interstate governmental agency—

(A) who has accrued compensatory time off authorized to be provided under paragraph (1), and

(B) who has requested the use of such compensatory time, shall be permitted by the employee's employer to use such time within a reasonable period after making the request if the use of the compensatory time does not unduly disrupt the operations of the public agency.

4. This interpretation is consistent with the Department of Labor regulations that describe compensatory time as a "right" the employee receives, *see* 29 C.F.R. § 553.25(b), and that require the employer to inform the employee "that compensatory time received may be preserved" by the employee. *See* 29 C.F.R. § 553.23(c)(1)(ii).

*shita Elec.*, 475 U.S. at 586, 106 S.Ct. at 1355–56. Accordingly, the Court finds that there is a genuine issue of material fact as to whether Defendant's restrictions on the use of compensatory time are necessary to prevent an undue disruption of police operations.

### E. Liquidated Damages

■ One final issue remains: whether Plaintiff is entitled to liquidated damages in the full amount of unpaid overtime compensation. Section 216(b) of the FLSA provides that an employer who fails to compensate employees in accordance with section 207 "shall be liable to the ... employees affected in the amount of their ... unpaid overtime compensation ... *and in an additional equal amount as liquidated damages.*" 29 U.S.C. § 216(b) (emphasis added). Although the language of section 216(b) is mandatory, the Court has discretion to reduce the amount of liquidated damages, or to deny the award, if the employer shows that its FLSA violation occurred in good faith. 29 U.S.C. § 260; *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1063 (2d Cir.1988). To merit a liquidated damages reduction, the employer must establish both that it acted with subjective good faith and that it had objectively reasonable grounds for believing that it acted in compliance with the FLSA. *See* 29 U.S.C. § 260. The employer's burden is "difficult" to meet; liquidated damages are the norm rather than the exception. *See Brock v. Wilamowsky*, 833 F.2d 11, 19 (2d Cir.1987).

Employer ignorance of the law is insufficient to establish good faith. "The defense requires plain and substantial evidence of at least an honest intention to ascertain what the Act requires and to comply with it." *Brock*, 833 F.2d at 19; *see also Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 907–08 (3d Cir.1991). Adherence to industry practice, when such practice violates the FLSA, is likewise insufficient. *See Wilamowsky*, 833 F.2d at 19–20; *Martin*, 940 F.2d at 910.

Defendant all but admits its adherence to customary practice and its failure to attempt to ascertain whether Plaintiff's off-duty canine-related activities were compensable under the FLSA. Defendant argues that be-cause Plaintiff never requested overtime compensation for the instant activities, Plaintiff is not entitled to a "double recovery." Defendant's argument, however, carries little weight. "The fact that an employer has broken the law for a long time without complaints from employees does not demonstrate the requisite good faith required by the statute." *Williams v. Tri–County Growers, Inc.*, 747 F.2d 121, 129 (3d Cir.1984); *see also Wilamowsky*, 833 F.2d at 19; *Martin*, 940 F.2d at 908.

Hellmers asserts that he put Chief of Police Stica on notice by September, 1993, that he might have a valid FLSA claim against the VPD. Although Stica states in opposition that "I had no knowledge that Mr. Hellmers was spending more than a minimal amount of time with his police dog during off-duty hours," (Stica Aff. ¶ 18), Defendant has submitted no evidence whatsoever that it made any effort to determine whether it was in compliance with the FLSA. On the issue of liquidated damages, employer ignorance of the law is insufficient to establish good faith. *See Brock*, 833 F.2d at 19 ("The defense requires plain and substantial evidence of at least an honest intention to ascertain what the Act requires and to comply with it.").

As defendant has failed to raise a genuine issue of material fact as to whether it met even the minimum good faith requirement of attempting to ascertain its compliance with the FLSA, the Court grants Plaintiff's motion for summary judgment on this issue. Thus, should Plaintiff succeed on any of his FLSA claims at trial, he would be entitled to liquidated damages.

### III. CONCLUSION

In summary, Defendant's Motion for Summary Judgment is DENIED in its entirety. Plaintiff's Cross–Motion for Summary Judgment is GRANTED IN PART: Plaintiff's time spent grooming, bathing, exercising, cleaning, and training the police dog is "work" under the FLSA; Plaintiff's time spent cleaning his police firearm and cleaning his police vehicle is considered "work" under the FLSA. However, Plaintiff is not entitled to compensation for time spent commuting to work and for time spent cleaning

his police uniform. In addition, the court will RESERVE on the issue of whether Plaintiff's remaining canine and non-canine activities are compensable under the FLSA.

Furthermore, the Court concludes that whether Plaintiff's off-duty canine activities and non-canine activities were reasonably necessary, and whether the Town of Vestal "permitted or suffered" Plaintiff's off-the-clock activities, are issues properly left to be resolved based on the evidence presented at trial.

Furthermore, the Court finds that there is a genuine issue of material fact as to whether Defendant willfully violated the FLSA and thus whether Plaintiff is entitled to a two or three year statute of limitations. The Court also finds that there is a genuine issue of material fact as to whether Defendant's restrictions on the use of compensatory time violate the FLSA.

Furthermore, should Plaintiff succeed on any of his FLSA claims at trial, he is entitled to liquidated damages.

Finally, Defendant's request for a jury trial is GRANTED. All other requests for relief by either party are DENIED.

**IT IS SO ORDERED.**